PEOPLE v SMITH

PEOPLE v WALLACE

PEOPLE v SHOUP

PEOPLE v THOMPSON

Docket No. 70508. Argued January 8, 1985 (Calendar No. 4). Docket Nos. 73432, 73433, 73710, 73941. Argued June 6, 1985 (Calendar Nos. 18-20).—Decided November 20, 1985.

Timothy R. Smith pled guilty in the Lenawee Circuit Court, Kenneth B. Glaser, Jr., J., of breaking and entering an unoccupied dwelling, resisting an officer in the discharge of his duty, being a third-felony offender with the breaking and entering serving as the principal felony, and being a fourth-felony offender with the resisting and obstructing charge serving as the principal offense. The prior convictions that served as the bases for the defendant's habitual-offender charges included breaking and entering, a felony, and joyriding and resisting and obstructing an officer in the discharge of his duty, both of which are misdemeanors punishable by a maximum of two years in the state prison. The court sentenced the defendant to serve terms of from ten to twenty years and from ten to fifteen years for the habitual-offender convictions. The Court of Appeals, Hood, P.J., and J. H. Gillis, J. (R. M. Maher, J., dissenting), affirmed in an unpublished memorandum opinion (Docket No. 67650). The defendant appeals.

Paul F. Wallace pled guilty in the Barry Circuit Court, Richard Robinson, J., of joyriding and was sentenced to five years probation, with the first year to be served in the county jail.

REFERENCES FOR POINTS IN HEADNOTES

[1] Am Jur 2d, Criminal Law §§ 28-30, 567-579.

[1, 2] Am Jur 2d, Criminal Law §§ 551-556.

See the annotations in the ALR3d/4th Quick Index under Habitual Criminals.

[3] Am Jur 2d, Criminal Law §§ 469 *et seq.,* 551.

See the annotations in the ALR3d/4th Quick Index under Sentence and Punishment.

[4, 5] Am Jur 2d, Criminal Law §§ 527, 528.

Defendant's right to disclosure of presentence reports. 40 ALR3d 681.

The Court of Appeals, CYNAR, P.J., and J. H. GILLIS, J. (WAHLS, J., dissenting), affirmed in an unpublished opinion (Docket No. 69042). The defendant appeals.

David Shoup, Jr., pled guilty in the Mason Circuit Court, Richard I. Cooper, J., of joyriding and was sentenced to three years probation, with the first nine months to be served in the county jail. The Court of Appeals, GRIBBS, P.J., and HOOD, J. (WAHLS, J., dissenting), affirmed in an unpublished opinion per curiam (Docket No. 71019). The defendant appeals.

Jeffrey L. Thompson was charged with arson of personal property with a value of over $50, a felony, but pled guilty in the St. Clair Circuit Court of attempted arson of personal property with a value of over $50, a misdemeanor. After the plea was accepted, but before sentencing on the attempted arson conviction, the defendant committed a breaking and entering, but pled guilty of attempted breaking and entering with intent to commit larceny. The court, James T. Corden, J., sentenced the defendant to from three years, four months to five years for the attempted breaking and entering, to run consecutively with a sentence of from sixteen months to two years for the prior attempted arson. The Court of Appeals, J. H. GILLIS, P.J., and V. J. BRENNAN and LAMBROS, JJ., affirmed in an opinion per curiam (Docket No. 57929). The defendant appeals.

The defendants allege that the provisions of the Penal Code which define certain offenses punishable by up to two years in prison as "misdemeanors" are in conflict with the provisions of the Code of Criminal Procedure which define offenses punishable by more than one year in prison as "felonies" and argue that the Penal Code should control and thus that the misdemeanors should not provide a basis for applying the habitual-offender, probation, and consecutive sentencing provisions of the Code of Criminal Procedure.

In *Thompson,* the defendant additionally asserts that only a conviction of the originally charged first felony, and not any conviction arising out of the initial felony charge, may serve as the conviction of the prior charged offense required for consecutive sentencing and that, for purposes of the consecutive sentencing statute, the disposition of a charge does not remain pending after a defendant pleads guilty to a lesser charge, even though the defendant has yet to be sentenced on the lesser charge and the original charge is not formally dismissed.

In opinions by Chief Justice WILLIAMS, joined by Justices LEVIN and CAVANAGH, and by Justice BOYLE, joined by Justices RYAN, BRICKLEY, and RILEY, the Supreme Court *held:*

Offenses defined in the Penal Code as misdemeanors punish-

able by up to two years in prison may be considered felonies for the purposes of the habitual-offender, probation, and consecutive sentencing provisions of the Code of Criminal Procedure. A two-year misdemeanor conviction arising out of a first felony charge may serve as the conviction of the prior charged offense required for consecutive sentencing. The disposition of a charge remains pending after a defendant pleads guilty to a lesser charge, but before the defendant is sentenced and before the original charge is formally dismissed, for purposes of the habitual-offender statutes, until the defendant is sentenced on a conviction arising out of the offense and until the original charge arising out of the offense is dismissed.

1. The purpose of the Penal Code is to define crimes and prescribe penalties, while the purpose of the Code of Criminal Procedure is to codify the laws relating to criminal procedure. Each code has its own definitions of misdemeanor and felony to promote its distinct purpose; the Penal Code's definitions serve to describe the grade of each offense, and the definitions of the Code of Criminal Procedure govern which procedural protections and which collateral consequences of conviction attach to a given offense. The Legislature clearly expressed its intent that offenses punishable by more than one year of imprisonment be treated as felonies throughout the Code of Criminal Procedure. In addition to imposing harsher penalties than those imposed upon conviction of misdemeanors, the felony designation also affords an accused greater procedural protections. Penal Code definitions apply only to the Penal Code, while definitions included in the Code of Criminal Procedure are limited to that code. To apply the definition of misdemeanor in one statute to the operations of another would defeat the purposes of the second statute.

2. The purpose of the habitual-offender, probation, and consecutive sentencing statutes in the Code of Criminal Procedure, is to enhance the punishment imposed upon those who have been found guilty of more serious crimes and who repeatedly engage in criminal acts. In order to achieve the purpose, the Legislature intended that offenses punishable by more than one year imprisonment are "felonies" for purposes of the statutes. Because misdemeanors punishable by two years imprisonment under the Penal Code fall within the felony definition of the Code of Criminal Procedure, they may be considered felonies for purposes of the habitual-offender, probation, and consecutive sentencing statutes.

3. The purpose of the consecutive sentencing statute is to deter those accused of one felony from committing another

prior to the final disposition of the first. Practical necessities of the criminal justice system require reduction of charges as a result of plea bargaining. To hold that consecutive sentencing is permissible only where a conviction matches precisely the initial charge of the first felony would undermine the purpose. A two-year misdemeanor conviction arising out of a first felony charge may serve as the conviction of the prior charged offense required for consecutive sentencing. A charge remains pending for purposes of consecutive sentencing until a defendant is sentenced on the conviction arising out of the first offense and until the original charge arising out of the first offense is dismissed.

*Smith, Wallace, Shoup,* and *Thompson* affirmed.

Chief Justice WILLIAMS, joined by Justices LEVIN and CAV-ANAGH, additionally would hold that an ex parte conference between a sentencing judge and a probation officer regarding a presentence report violates a defendant's right to counsel requiring resentencing where the sentencing judge obtains information about the defendant from the probation officer that is not included in the written presentence report. Unless all information used to sentence a defendant is included in the written presentence report, counsel has no opportunity to represent a defendant effectively. In *Thompson,* the sentencing judge did not obtain information about the defendant which did not appear in the presentence report; therefore, resentencing is not required.

Justice BOYLE, joined by Justices RYAN, BRICKLEY, and RILEY, concurring in part and dissenting in part, joined the opinion of Chief Justice WILLIAMS in *Smith, Wallace,* and *Shoup,* and part of *Thompson,* but did not join in the dictum in *Thompson* with respect to the issue of ex parte communications between trial judges and probation officers.

In *Thompson,* the communication between the judge and the probation officer involved merely the correction of a technical error about the statutorily permitted maximum sentence, a correction which could have been performed even without the communication simply by referring to the statute. The communication was clearly not improper, and, consequently, the extended discussion of other kinds of communications between trial judges and probation officers, and about whether the right to counsel attaches to such communications, is unnecessary and clearly dictum.

She stated further that were the discussion of the issue not dictum, she would be constrained to disagree. A probation

officer is an aide to the court, a resource person available for consultation. To prohibit discussion between the court and the officer would certainly diminish the effectiveness of the liaison. When a probation officer prepares a presentence report he is acting as an arm of the court, and thus ex parte communication between the court and the probation officer is permitted. There is simply no basis for the assertion that a right to counsel attaches to communications between sentencing judges and probation officers. The defendant's right to confront witnesses against him provides no basis for a right to counsel at presentence conferences because the probation officer is not a witness against the defendant, and such communications between judges and probation officers are not ex parte communications. Probation officers are not agents of the prosecutor. Thus, a trial judge's communication with a probation officer is not a communication with "one party only" in the absence of the other party. Because the probation officer is not an adverse party to the defendant, but instead is an arm of the court, there is no basis for concluding that a Fifth or Sixth Amendment right to counsel attaches to such communications. While there is a due process right not to be sentenced on the basis of inaccurate information, this right in no way implies that there is a concomitant right to counsel at presentence conferences. In Michigan, factual information upon which a sentence is based must either be disclosed to the defendant and counsel, or the trial judge must inform them on the record that such information has been withheld for articulated reasons which conform with the statutory exceptions to the disclosure requirement. Furthermore, the trial court must articulate on the record the reasons for the sentence imposed. These procedures adequately ensure that the sentence is based on accurate factual information. Consequently, the presence of defense counsel at conferences between sentencing judges and probation officers is unnecessary to ensure the vindication of defendant's due process right to be sentenced on the basis of accurate information.

Justice RILEY, concurring, noted that there is no inconsistency between Chief Justice WILLIAMS' opinion in this case and her opinion in *People v Bernard Smith,* 81 Mich App 561 (1978), because *Bernard Smith* dealt with a conflict between two provisions of the Penal Code, while this case involves a conflict between a provision of the Penal Code and a provision of the Code of Criminal Procedure.

117 Mich App 210; 323 NW2d 656 (1982) affirmed.

Opinion by Williams, C.J.

1. Criminal Law — Felonies — Misdemeanors — Habitual Of-
   fenders — Probation — Consecutive Sentences.

   Offenses defined in the Penal Code as misdemeanors punishable
   by up to two years in prison may be considered felonies for the
   purposes of the habitual-offender, probation, and consecutive
   sentencing provisions of the Code of Criminal Procedure (MCL
   750.1 *et seq.*, 760.1 *et seq.*, 768.7b, 769.10-769.12, 771.2; MSA
   28.191 *et seq.*, 28.841 *et seq.*, 28.1030[2], 28.1082-28.1084,
   28.1132).

2. Criminal Law — Consecutive Sentences — Prior Charged
   Offenses.

   A two-year misdemeanor conviction arising out of a first felony
   charge may serve as the conviction of the prior charged offense
   required for consecutive sentencing (MCL 768.7b; MSA
   28.1030[2]).

3. Criminal Law — Habitual Offenders — Guilty Pleas — Lesser
   Included Offenses.

   The disposition of a charge remains pending after a defendant
   pleads guilty to a lesser charge, but before the defendant is
   sentenced and before the original charge is formally dismissed,
   for purposes of the habitual-offender statutes until a defendant
   is sentenced on a conviction arising out of the offense, and until
   the original charge arising out of the offense is dismissed (MCL
   769.10-769.12; MSA 28.1082-28.1084).

4. Criminal Law — Presentence Reports — Ex Parte Confer-
   ences — Right to Counsel.

   *An ex parte conference between a sentencing judge and a proba-
   tion officer regarding a presentence report requires resentenc-
   ing only where the sentencing judge obtains information about
   the defendant from the probation officer that is not included in
   the written presentence report.*

Opinion by Boyle, J.

5. Criminal Law — Presentence Reports — Presentence Confer-
   ences — Right to Counsel.

   *A probation officer, in preparing a presentence report, acts as an
   arm of the court, and may communicate with the court out of
   the presence of the defendant; no right to counsel attaches to
   such communications: the defendant does not have a right to
   confront the officer because the officer is not a witness against
   the defendant, the communications are not ex parte because
   the officer is not an adverse party, and the requirement of
   disclosure to the defendant and counsel of the information on*

*which a sentence is based or articulation on the record that information is being withheld and the reasons for the withholding ensures vindication of the defendant's due process right to be sentenced on the basis of accurate information.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert H. Cleland,* Prosecuting Attorney, and *Peter R. George,* Chief Appellate Attorney, for the people in *Thompson; Nathan T. Fairchild,* Prosecuting Attorney, and *Michael A. Nickerson,* Assistant Attorney General, for the people in *Smith; Judy A. H. Hughes,* Prosecuting Attorney, and *Michael A. Nickerson,* Assistant Attorney General, for the people in *Wallace; Cris J. Van Oosterum,* Prosecuting Attorney, and *Michael A. Nickerson,* Assistant Attorney General, for the people in *Shoup.*

State Appellate Defender (by *R. Steven Whalen*) for defendant Thompson; (by *Herb Jordan*) for defendant Smith; (by *Sheila N. Robertson*) for defendant Wallace; (by *Richard B. Ginsberg*) for defendant Shoup.

WILLIAMS, C.J.

### INTRODUCTION

The primary issue in this case is whether offenses defined in the Penal Code as misdemeanors punishable by up to two years in prison may be considered "felonies" for the purposes of the habitual-offender, probation, and consecutive sentencing provisions of the Code of Criminal Procedure, where the code defines "felony" as an offense punishable by more than one year in the state prison. Two-year misdemeanors, of course, fall within the Code of Criminal Procedure's definition of felony.

The plain language of the statutes involved, considered in light of the purposes sought to be accomplished, leads us to conclude that the Legislature intended two-year misdemeanors to be considered as misdemeanors for purposes of the Penal Code, but as felonies for purposes of the Code of Criminal Procedure's habitual-offender, probation, and consecutive sentencing statutes.

*People v Thompson* also raises two questions regarding the interpretation given other language in the consecutive sentencing statute in the Code of Criminal Procedure. The first question is whether one must be convicted of the particular "prior charged" felony as a first offense in order to receive consecutive sentencing for a second offense. We hold that a two-year misdemeanor conviction arising out of the first felony charge may serve as the "conviction of the prior charged offense" required for consecutive sentencing. See MCL 768.7b(a); MSA 28.1030(2)(a).

The second question is whether the disposition of a charge remains "pending" after a defendant pleads guilty to a lesser charge, but before the defendant is sentenced on the lesser charge and before the original charge is formally dismissed. We hold that a charge remains "pending" for purposes of this statute until a defendant is sentenced on a conviction arising out of the offense, and until the original charge arising out of the offense is dismissed.

The final question raised in *Thompson* is whether an ex parte conference between a sentencing judge and a probation officer regarding a presentence report violates a defendant's right to counsel. We hold that the right to counsel is violated, and a defendant must be resentenced, if the sentencing judge obtains information about the

defendant from the probation officer that is not included in the written presentence report.

The application of these rules to the facts presented by the cases at bar leads us to conclude that the convictions and sentences received by the defendants should be upheld. We also hold that Thompson need not be resentenced because the information obtained ex parte by the sentencing judge from the probation officer was not about Thompson.

## I. FACTS

### People v Smith

Timothy Smith pled guilty in the Lenawee Circuit Court to breaking and entering an unoccupied dwelling, MCL 750.110; MSA 28.305, and to resisting an officer in the discharge of his duty, MCL 750.479; MSA 28.747. At the same proceeding, he pled guilty of being a third felony offender, MCL 769.11; MSA 28.1083, with the breaking and entering serving as the principal felony. He also pled guilty of being a fourth felony offender, MCL 769.12; MSA 28.1084, with the resisting and obstructing charge serving as the principal offense.

The prior convictions serving as the bases for Smith's habitual-offender charges included breaking and entering, joyriding, and resisting and obstructing an officer in the discharge of his duty. The joyriding and resisting and obstructing statutes provide that commission of the offense shall be a misdemeanor punishable by a maximum of two years in the state prison. MCL 750.414, 750.479; MSA 28.646, 28.747. Smith was sentenced to serve terms of ten to twenty years and from ten to fifteen years for the habitual-offender convictions.

The Court of Appeals affirmed Smith's convictions in an unpublished opinion, with Judge MAHER dissenting. On September 19, 1984, we granted leave to appeal. 419 Mich 922 (1984).

*People v Wallace*

Paul Wallace pled guilty in the Barry Circuit Court to joyriding, MCL 750.414; MSA 28.646. As stated above, the joyriding statute provides that commission of the offense is a misdemeanor punishable by a maximum of two years in the state prison. Wallace was sentenced to serve five years probation, with the first year to be served in the Barry County Jail.

The Court of Appeals affirmed in an unpublished opinion, with Judge WAHLS dissenting. On September 19, 1984, we granted leave to appeal. 419 Mich 923 (1984).

*People v Shoup*

David Shoup pled guilty in the Mason Circuit Court to joyriding, MCL 750.414; MSA 28.646. As stated above, the joyriding statute provides that commission of the offense is a misdemeanor punishable by a maximum of two years in the state prison. Shoup was sentenced to serve three years probation, with the first nine months to be served in the Mason County Jail.

The Court of Appeals affirmed in an unpublished opinion, with Judge WAHLS dissenting. On September 19, 1984, we granted leave to appeal. 419 Mich 923 (1984).

*People v Thompson*

Jeffrey Thompson was charged with arson of personal property over $50 on September 18, 1980. The offense is a four-year felony. MCL 750.74; MSA 28.269. On September 29, 1980, Thompson pled guilty in the St. Clair Circuit Court to a

reduced charge of attempted arson of personal property over $50. The statute proscribing attempted arson, MCL 750.92; MSA 28.287, provides that the offense is a misdemeanor punishable by a maximum of two years in the state prison.

On October 3, 1980, while awaiting sentencing on his misdemeanor conviction, Thompson attempted a breaking and entering.

Thompson eventually pled guilty to the charge of attempted breaking and entering. He was sentenced for both convictions at the same proceeding. He received sixteen to twenty-four months for attempted arson, and three years, four months to five years for attempted breaking and entering. He was ordered to serve the sentences consecutively. At the sentencing, the prosecutor dismissed the original felony charge.

The Court of Appeals affirmed. 117 Mich App 210; 323 NW2d 656 (1982). On February 28, 1984, we granted leave to appeal. 418 Mich 946 (1984).

## II. THE ALLEGED STATUTORY CONFLICT

Defendants allege that provisions of the Penal Code which label particular offenses which are punishable by up to two years in state prison as "misdemeanors" conflict with provisions of the Code of Criminal Procedure which define offenses punishable by more than one year in the state prison as "felonies" and that the Penal Code label should control. The relevant provisions of each code are set forth below.

A. *The Statutes*

1. The Penal Code

The purpose of the Penal Code is to "define crimes and prescribe the penalties therefor." Preamble, MCL 750.1 *et seq.;* MSA 28.191 *et seq.* The

Penal Code includes its own definitional provisions. Crimes are divided into "felonies" and "misdemeanors," MCL 750.6; MSA 28.196. A "felony" is an "offense for which the offender, on conviction may be punished by death, or by imprisonment in state prison." MCL 750.7; MSA 28.197. A "misdemeanor" is an act or omission that is not a felony, which is punishable by fine, penalty, forfeiture, or imprisonment, MCL 750.8; MSA 28.198, or an act prohibited by a statute which imposes no penalty for the violation, MCL 750.9; MSA 28.199.

In some instances, the same provision of the Penal Code labels a crime a felony or misdemeanor and also sets the maximum penalty. See, *e.g.,* MCL 750.75; MSA 28.270 and MCL 750.81a; MSA 28.276(1). In other instances, one provision labels the crime, and another supplies the penalty. A person convicted of a misdemeanor for which the penalty is not specifically designated is punishable by a maximum of ninety days in the county jail or a $100 fine, or both. MCL 750.504; MSA 28.772. A person convicted of a felony for which the penalty is not specifically designated is punishable by a maximum of four years in state prison or a $2,000 fine, or both. MCL 750.503; MSA 28.771.

The defendants in the cases at bar have all been convicted of offenses which are labeled "misdemeanors" and which are punishable by a maximum of two years imprisonment under the Penal Code. MCL 750.414; MSA 28.646, MCL 750.479; MSA 28.747, MCL 750.74; MSA 28.269, MCL 750.92; MSA 28.287. These offenses have been referred to as "two-year," "circuit court," or "high" misdemeanors.

2. Code of Criminal Procedure

The purpose of the Code of Criminal Procedure is to "codify the laws relating to criminal procedure." Preamble, MCL 760.1 *et seq.;* MSA 28.841

*et seq.* The Code of Criminal Procedure has its own definitional section:

> As used in this act:
>
> * * *
>
> (g) *"Felony"* means a violation of a penal law of this state for which the offender, upon conviction, may be punished by death or by *imprisonment for more than 1 year,* or an offense expressly designated by law to be a felony.
> (h) "Misdemeanor" means a violation of a penal law of this state which is not a felony, or a violation of an order, rule, or regulation of a state agency that is punishable by imprisonment or by a fine that is not a civil fine. [MCL 761.1; MSA 28.843. Emphasis added.]

An offense labeled a two-year misdemeanor under the Penal Code falls within the definition of "felony" under the Code of Criminal Procedure.

The designation of an offense as a felony for the purposes of the Code of Criminal Procedure has particular consequences. Those convicted of felonies face the possibility of serving longer sentences under at least three provisions of the Code of Criminal Procedure. The "habitual offender" statute, for example, provides that one's sentence may be enhanced in various prescribed ways where

> a person has been convicted of a felony, an attempt to commit a felony, or both, whether the conviction occurred in this state or would have been for a felony in this state if the conviction obtained outside this state had been obtained in this state, and that person commits a subsequent felony within this state . . . . [MCL 769.10; MSA 28.1082.]

Similar provisions allow further enhancement

where one has previously been convicted of two, three, or more felonies. MCL 769.11, 769.12; MSA 28.1083, 28.1084.

The probation statute provides:

> If the defendant is convicted for an offense which is not a felony the period of probation shall not exceed 2 years. If the defendant is convicted of a felony which is not a major controlled substance offense, the period of probation shall not exceed 5 years. [MCL 771.2; MSA 28.1132.]

The consecutive sentencing statute provides:

> When a person, who has been charged with a felony and pending the disposition of the charge, commits a subsequent offense which is a felony, upon conviction of the subsequent offense or acceptance of a plea of guilty, guilty but mentally ill, or nolo contendere for the subsequent offense, the following shall apply:
>
> (a) The sentences imposed for conviction of the prior charged offense and a subsequent offense, other than a major controlled substance offense, may run consecutively. [MCL 768.7b; MSA 28.1030(2).]

## B. *Court of Appeals Interpretation*

For purposes of the habitual-offender statute, all panels of the Court of Appeals have held that two-year misdemeanors may be deemed felonies. *People v Rosecrants,* 88 Mich App 667; 278 NW2d 713 (1979); *People v Davis,* 89 Mich App 588; 280 NW2d 604 (1979); *People v Rice,* 101 Mich App 1; 300 NW2d 428 (1980), *rev'd on other grounds* 411 Mich 883; 306 NW2d 102 (1981).

Likewise, for purposes of the probation statute, all panels have held that two-year misdemeanors may be deemed felonies. *People v Stiles,* 99 Mich

App 116; 297 NW2d 631 (1980), *lv den* 410 Mich 891 (1981); *People v Reuther,* 107 Mich App 349; 309 NW2d 256 (1981) (BRONSON, J., *concurring in part and dissenting in part*); *People v Woodard,* 134 Mich App 128; 350 NW2d 761 (1984); *People v Hathcox,* 135 Mich App 82; 351 NW2d 903 (1984).

However, for purposes of the consecutive sentencing statute, panels have split on the question whether two-year misdemeanors may be deemed felonies. Panels holding that two-year misdemeanors may be deemed felonies include *People v Comstock,* 139 Mich App 276; 361 NW2d 792 (1984); *People v Coleman,* 141 Mich App 12; 366 NW2d 67 (1985). Those reaching the opposite conclusion include *People v Alford,* 104 Mich App 255; 304 NW2d 541 (1981); *People v Frost,* 120 Mich App 328; 328 NW2d 44 (1982). We look to canons of statutory construction in order to determine which of these conflicting interpretations best effectuates the legislative intent.

## III. STATUTORY CONSTRUCTION

Courts are required to ascertain and give effect to the purpose and intent of the Legislature by examining the provisions in question. The statutory words must be considered in light of the general purpose sought to be accomplished. *White v Ann Arbor,* 406 Mich 554, 562; 281 NW2d 283 (1979). The Legislature may be presumed to have intended a meaning that is clearly expressed and to have intended that every word and section be given effect. *Soap & Detergent Ass'n v Natural Resources Comm,* 415 Mich 728, 738; 330 NW2d 346 (1982). The Legislature may also be presumed to know of existing legislation on the same subject. *People v Buckley,* 302 Mich 12, 21; 4 NW2d 448 (1942). Statutes which relate to the same persons

or things, or which have a common purpose, are to be read *in pari materia,* and a strict construction will not be given to one statute where doing so would defeat the main purpose of another on the same subject. *Detroit v Michigan Bell Telephone Co,* 374 Mich 543, 558, 561; 132 NW2d 660 (1965), *app dis, cert den* 382 US 107 (1965).

While the Penal Code and the Code of Criminal Procedure relate generally to the same thing and must therefore be read *in pari materia,* the two codes were separately enacted and have distinct purposes. As concerns this case, the purpose of the Penal Code is "to define crimes and prescribe the penalties therefor . . . ." Preamble, MCL 750.1 *et seq.;* MSA 28.191 *et seq.* The purpose of the Code of Criminal Procedure is to "codify the laws relating to criminal procedure . . . ." Preamble, MCL 760.1 *et seq.*; MSA 28.841 *et seq.*

Included in the Code of Criminal Procedure are provisions for the proper procedures to be followed, for example: upon arrest, MCL 764.1 *et seq.;* MSA 28.860 *et seq.,* at the preliminary examination, MCL 766.1 *et seq.;* MSA 28.919 *et seq.,* at trial, MCL 768.1 *et seq.;* MSA 28.1024 *et seq.,* and at judgment and sentencing, MCL 769.1 *et seq.;* MSA 28.1072 *et seq.* The Legislature expressly provided that the Code of Criminal Procedure be deemed "remedial" and be "liberally construed to effectuate the intents and purposes" of the act. MCL 760.2; MSA 28.842.

Each code has its own definitions of "misdemeanor" and "felony" in order to more effectively promote the distinct purposes of each. The Penal Code's definitions serve to describe the grade of each offense and, in some instances, to prescribe the penalty for the offense. The definitions in the Code of Criminal Procedure govern which proce-

dural protections and which collateral consequences of conviction attach to a given offense.

The Legislature clearly expressed its intent that offenses punishable by more than one year of imprisonment be treated as "felonies" throughout the Code of Criminal Procedure. Such a designation brings both benefits and liabilities to a defendant. One accused of a "felony" as defined in the Code of Criminal Procedure is sometimes afforded greater procedural protections than one accused of a "misdemeanor" as defined in the Code of Criminal Procedure.[1] One can infer that the Legislature considered one year of imprisonment the threshold loss of liberty which should trigger these additional protections.

By the same token, one convicted of a "felony" as defined in the Code of Criminal Procedure may incur collateral penalties which result in harsher treatment than is received by one convicted of a "misdemeanor" as defined in the Code of Criminal

---

[1] See, *e.g.,* MCL 771.14; MSA 28.1144, which makes a presentence investigation and report a matter of right for those accused of a felony and a matter within the court's discretion for those accused of a misdemeanor.

Also compare the differing treatment afforded those arrested for felonies and those arrested for "minor offenses," a class of "misdemeanors" and ordinance violations for which the maximum permissible imprisonment does not exceed ninety-two days and the maximum permissible fine does not exceed $500. MCL 761.1(k); MSA 28.843(k).

In contrast with those arrested for felonies, a person arrested for a minor offense need not be taken immediately before a magistrate, and a complaint need not be immediately presented to a magistrate. *Cf.* MCL 764.9c; MSA 28.868(3), with MCL 764.13; MSA 28.871(1). Public servants other than peace officers can be authorized to serve appearance tickets for certain offenses of less than felony grade. MCL 764.9c; MSA 28.868(3). An examining magistrate can accept a plea of guilty or not guilty for certain minor offenses for which an appearance ticket has been issued without the necessity of a sworn complaint. MCL 764.9g; MSA 28.868(7). Finally, while most complaints must be sworn to before a magistrate or clerk, MCL 764.1a; MSA 28.860(1), for certain minor offenses the complaint is simply treated as having been made under oath if it contains a declaration that the statements are true upon information and belief above the date and signature of a peace officer. MCL 764.1e; MSA 28.860(5).

Procedure. One can infer that the Legislature believed that those guilty of committing offenses punishable by at least one year of imprisonment had committed crimes sufficiently serious to warrant the imposition of particular collateral consequences.

It is obvious that the Penal Code definitions apply only to the Penal Code. Similarly, the definitions in the Code of Criminal Procedure are limited in application to that code. To apply the definition of misdemeanor in one statute to the operations of the other statute would defeat the purposes of the other statute.

We have previously held that the grade given an offense in the Penal Code is not the controlling consideration in determining the procedural rights afforded an accused outside the Penal Code. *People v Mallory,* 378 Mich 538; 147 NW2d 66 (1967). In *Mallory,* the defendant had been convicted of receiving and concealing stolen property under the value of $100, a misdemeanor punishable by ninety days in jail or a $100 fine or both. MCL 750.504, 750.535; MSA 28.772, 28.803. The defendant claimed that he was entitled to appointed appellate counsel and a free trial transcript under the constitutional provision which states:

> In *every criminal prosecution,* the accused shall have the right . . . to have the assistance of counsel for his defense; to have an appeal as a matter of right; and as provided by law, when the trial court so orders, to have such reasonable assistance as may be necessary to perfect and prosecute an appeal. [Const 1963, art 1, § 20. Emphasis added.]

We held that the constitutional guarantee of an appeal as a matter of right from criminal prosecutions required that an indigent be provided with

appointed appellate counsel and a free transcript of the proceedings at trial, noting that "[t]he name 'felony' or 'misdemeanor' can make small difference as relates to [defendant's] constitutional right to such assistance." *Id.,* p 559.

The label placed upon an offense in the Penal Code is just as irrelevant in determining statutorily mandated post-conviction procedures in the Code of Criminal Procedure as it is in determining constitutionally mandated post-conviction procedures. The three post-conviction statutes at issue here, the habitual-offender statute, the probation statute, and the consecutive sentencing statute, all have the same general purpose: to enhance the punishment imposed upon those who have been found guilty of more serious crimes and who repeatedly engage in criminal acts. In order to achieve the Legislature's intended purpose in the Code of Criminal Procedure, we find that the Legislature meant exactly what it said: Offenses punishable by more than one year of imprisonment are "felonies" for purposes of the habitual-offender, probation, and consecutive sentencing statutes. Because misdemeanors punishable by two years of imprisonment fall within the "felony" definition, they may be considered felonies for purposes of these statutes.[2]

---

[2] Defendants argue that this reading renders meaningless the "misdemeanor" label found in the Penal Code, contrary to our responsibility to give effect to all words and provisions, if possible. However, the "misdemeanor" label does have some consequences. The social stigma attached to a misdemeanor conviction is less than that which attaches to a felony conviction. We also note that our constitution disqualifies anyone who "has within the preceding 20 years been convicted of a felony involving a breach of public trust" from service in the Legislature. Const 1963, art 4, § 7. We suggest, without deciding here, that one convicted of a misdemeanor involving a breach of the public trust might not be disqualified from service. Thus, it cannot be said that our reading of the Code of Criminal Procedure renders the "misdemeanor" designation in the Penal Code totally meaningless.

Defendants also argue that our reading of the Code of Criminal

We reject defendants' contention that the rule of lenity supports a finding that two-year misdemeanors may not be considered felonies. The rule of lenity requires that ambiguities in penal statutes be resolved against the imposition of harsher punishments. *Bell v United States,* 349 US 81, 83; 75 S Ct 620; 99 L Ed 905 (1955). However, that rule applies only in the absence of a firm indication of legislative intent. *People v Wakeford,* 418 Mich 95, 113-114; 341 NW2d 68 (1983). As discussed above, we find the legislative intent in the Code of Criminal Procedure unambiguous.

## IV. APPLICATION TO THE FACTS

We affirm the convictions of Timothy Smith under the habitual-offender statutes, because the two-year misdemeanor convictions which served as the bases for his habitual-offender charges could be considered "felonies" for purposes of the habitual-offender statutes.

We affirm the sentences given to Paul Wallace

---

Procedure makes redundant certain language in the habitual-offender statutes. Those statutes provide that one who is convicted of "a felony, an *attempt* to commit a felony, or both," and who subsequently commits another felony, is subject to sentence enhancement. MCL 769.10-769.12; MSA 28.1082-28.1084. (Emphasis added.) The Penal Code designates an *attempt* to commit an offense punishable by less than five years in the state prison, by imprisonment in the county jail, or by fine, a two-year misdemeanor. MCL 750.92(3); MSA 28.287(3). Defendants argue that if a two-year misdemeanor "attempt" is by definition already a "felony," then the "attempt to commit felonies" language in the habitual-offender statutes is redundant. See *People v Reuther, supra,* pp 357-358 (BRONSON, J., *concurring in part and dissenting in part*).

However, this minor redundancy does not persuade us that the Legislature intended to except two-year misdemeanors from the definition of "felony" in the Code of Criminal Procedure. Other rules of statutory construction point persuasively toward the opposite conclusion. In addition, defendants have failed to recognize that the definitions in each code have full meaning for all the purposes of *that* code, but are not simply transferable to the other code. The reading advocated by defendants might render meaningless the Code of Criminal Procedure's clear definition of "felony."

and David Shoup, because the two-year misdemeanors of which they were convicted could be considered "felonies" for purposes of the probation statute.

Final disposition of Jeffrey Thompson's claim that consecutive sentences were unlawfully imposed on him must await further consideration of the consecutive sentencing statute, as set forth below. However, we hold that two-year misdemeanors may be considered "felonies" for whatever purposes that word is used in the consecutive sentencing statute. Therefore, Thompson's sentences may not be vacated on the ground that the two-year misdemeanor to which he pled guilty could not serve as the "felony" with which he had previously been charged.

## V. REMAINING ISSUES

*People v Smith*

Smith contends that his plea-based convictions as an habitual offender must be reversed because the court which accepted the pleas failed to advise him separately on the rights he was waiving by pleading to the habitual-offender charges, and because the court failed to elicit a statement from him that he was pleading guilty to the habitual-offender charges. Our review of the transcript of the plea-taking leads us to conclude that Smith was well informed by the court of the consequences of his guilty plea and that he and his counsel agreed with all aspects of the plea bargain, including the admission of prior convictions. Under these circumstances, reversal is unwarranted.

*People v Shoup*

Shoup contends that he must be resentenced because the sentencing judge imposed sentence

under the mistaken belief that the defendant had a prior felony conviction.

Defendant's presentence report indicated that he had two prior convictions, one for the misdemeanor of possession of marijuana, and one for the two-year misdemeanor of attempted larceny in a building. Unfortunately, the presentence report referred to the latter conviction as a "felony." At sentencing, both the prosecutor and the sentencing judge also referred to the defendant's having a prior felony conviction. Neither defendant nor his counsel challenged the presentence report or objected to the characterization of the offense as a felony.

The trial court denied defendant's post-trial motion for reduction of sentence. The court found that defendant had not been prejudiced by the mischaracterization of the offense as a felony, because the court had placed weight on the fact that defendant had only been out of jail a short time before getting into trouble again and had not been influenced by a label placed on the offense.

The Court of Appeals upheld the trial court's ruling, stating that the sentencing judge knew the true nature of defendant's convictions and had appropriately considered them before imposing sentence.

The sentencing judge's exercise of discretion must be based upon accurate information. *People v Malkowski,* 385 Mich 244, 249; 188 NW2d 559 (1971). Here, the judge was accurately informed that defendant had a prior conviction for attempted larceny in a building, but was inaccurately informed that that offense was a felony. Our review of the transcripts of the sentencing and the post-trial motion leads us to conclude that this misinformation did not affect the severity of the

sentence imposed, and hence resentencing is not required.

We should point out that our holding in the primary question presented by these cases should not be construed to mean that a two-year misdemeanor may be considered a "felony" for purposes other than those explicitly considered. In other words, the sentencing judge in this case could not have considered defendant's prior attempted larceny conviction a "felony" for purposes of determining the appropriate length of sentence to be initially imposed merely because such a conviction could be deemed a "felony" having collateral sentencing consequences under particular statutes within the Code of Criminal Procedure.

### People v Thompson

Thompson raises three separate arguments in support of his claim that his sentence must be vacated. The first two arguments concern the interpretation of the consecutive sentencing statute, which provides:

> When a person, who has been *charged with a felony and pending the disposition of the charge,* commits a subsequent offense which is a felony, upon conviction of the subsequent offense or acceptance of a plea of guilty, guilty but mentally ill, or nolo contendere for the subsequent offense, the following shall apply:
>
> (a) The sentences imposed for conviction of the *prior charged offense* and a subsequent offense, other than a major controlled substance offense, may run consecutively. [MCL 768.7b; MSA 28.1030(2). Emphasis added.]

Thompson's first argument is that one must be convicted of the particular felony initially charged in one's first offense in order to receive a consecu-

tive sentence for a second offense. In support of this argument, Thompson points to language in the statute which calls for conviction of the "prior *charged* offense" (emphasis added). One panel of the Court of Appeals has upheld this construction of the statute. *People v Glenn Jones,* 82 Mich App 403, 406-407; 266 NW2d 824 (1978).

Such a reading places undue emphasis upon one word in the statute and ignores others. The statute requires 1) that a person be "charged" with a "felony," 2) that pending the "disposition of the charge" the person commit a subsequent offense which is a felony, and 3) that the person be eventually convicted of the "prior charged offense." The word "offense" as used in the third clause is broad enough to encompass more than the specific felony originally charged. The phrase "disposition of the charge" is also broad enough to encompass more than just conviction of the specific felony originally charged. The use of these indefinite terms indicates the Legislature's intent that consecutive sentencing be available in a variety of circumstances not restrictively defined in the statute. The use of the adjective "charged" in the third clause appears to be superfluous, because one must have been charged in order to be convicted.

The interpretation advocated by defendant would also undermine the purpose of the legislation. This purpose is to deter those charged with one felony from committing another prior to final disposition of the first. Absent such a deterrent, a person could be assured of "one free crime" because of the usual policy of concurrent sentencing. The reading advocated by Thompson disregards the practical necessities of the criminal justice system, because many felony charges must be reduced in the process of plea bargaining. To hold that consecutive sentencing is permissible only

when the conviction matches the precise initial charge on the first felony would be to emasculate the statute.

In the instant case, Thompson was initially charged with the felony of arson of personal property over $50. He eventually pled guilty to the two-year misdemeanor of attempted arson of personal property over $50. Under the conclusion reached in part III, a two-year misdemeanor is a felony. For purposes of the Code of Criminal Procedure, the reduced charge constituting the "prior charged offense," of which Thompson was eventually convicted, was a felony. Thus, we reject Thompson's first contention.

Thompson's second question regarding interpretation of the consecutive sentencing statute is whether the disposition of his first charge was still *"pending"* at the time the second offense was committed.

In the instant case, Thompson had been charged with a felony and had pled guilty to a lesser offense at the time he committed another felony, breaking and entering. However, at the time of the second offense, Thompson had not been sentenced on his plea to the lesser offense and the original felony charge had not been dismissed.

Original charges are frequently retained until after sentencing because of the ease with which a defendant can withdraw a plea prior to sentencing. If we were to hold that a charge did not remain "pending" after a plea to an offense arising out of the first charge, then a defendant such as Thompson could escape consecutive sentencing merely by withdrawing the plea before sentencing, even if he were subsequently to plead guilty to another offense arising out of the first charge.

Such a consequence would thwart the purpose of the consecutive sentencing statute. Therefore we

hold that a charge remains "pending" for purposes of this statute until a defendant is sentenced on the conviction arising out of the first offense and until the original charge arising out of the first offense is dismissed. Under this rule, Thompson's first charge remained pending at the time of his second offense, and therefore consecutive sentencing was appropriate.

Thompson's third and final contention is that he should be resentenced because the sentencing judge's conference with the presentence investigator out of the presence of his attorney deprived him of his right to counsel. At sentencing on March 23, 1981, the judge indicated that he would follow the probation department's recommendation of three years, four months to five years imprisonment. Defense counsel said that the recommendation which had appeared in the presentence report was two years, eight months to five years. The discussion which ensued revealed that the sentencing judge had initiated contact with the probation officer who had prepared the presentence report. The officer had recommended that Thompson be sentenced to the maximum term, but had computed that term erroneously. In the private discussion between the officer and the judge, the error was corrected. Thus, while the sentence Thompson received exceeded that originally stated in the presentence report, it was equal to the maximum term recommended by the probation officer.

A defendant is entitled to assistance of counsel at sentencing because it is a critical stage of criminal proceedings at which substantial rights may be affected. *Mempa v Rhay,* 389 US 128, 134, 137; 88 S Ct 254; 19 L Ed 2d 336 (1967); *People v Johnson,* 386 Mich 305, 317; 192 NW2d 482 (1971). The presence of counsel is necessary to correct inaccuracies and to explain information in the

presentence report. The danger posed by ex parte communications between sentencing judges and those who write the presentence reports is that the trial judge will receive information about a defendant, and will use it in sentencing, without the defendant having an opportunity to point out inaccuracies or extenuating circumstances.

The United States Supreme Court has recognized the relationship between affording a defendant effective assistance of counsel at sentencing and affording a defendant due process of law at sentencing. In *Townsend v Burke,* 334 US 736; 68 S Ct 1252; 92 L Ed 1690 (1948), the Court held that the defendant's sentence was imposed without due process of law because he was not represented by counsel and because the sentencing court had relied on inaccurate information. The United States Supreme Court stated, "It is not the duration or severity of this sentence which renders it constitutionally invalid; it is the careless or designed pronouncement of sentence on a foundation so extensively and materially false, *which the prisoner had no opportunity to correct by the services which counsel would provide,* that renders the proceedings lacking in due process." (Emphasis added.) *Id.,* 741. See also *People v Lee,* 391 Mich 618, 636-637; 218 NW2d 655 (1974), citing *Townsend* for the proposition that due process considerations may limit the contents of presentence reports.

This Court has implicitly recognized the threat to due process and the effective assistance of counsel posed by inaccurate or incomplete presentence reports. In the years before a defendant was guaranteed the right to review the presentence report, we stated:

It is vitally important to the defendant and to

the ends of justice that the sentence be based upon accurate information. The great majority of defendants plead guilty. For those defendants, probation or determination of the length of time they will be in prison are the only significant decisions to be made by the judge. One commentator points out:

> "*Basic fairness to the accused would seem to require the same opportunity to rebut evidence against him at sentencing as at trial.* The stakes at sentencing may be just as high, and the justification for non-disclosure no more, than at the time of guilt determination." [Emphasis added. *People v Malkowski,* 385 Mich 244, 249; 188 NW2d 559 (1971) (inaccuracies in presentence report were not so prejudicial as to result in miscarriage of justice).]

More recently, we held that the need for "complete, accurate, and reliable" information at sentencing required the use of a reasonably updated presentence report in sentencing for felonies. *People v Triplett,* 407 Mich 510, 515; 287 NW2d 165 (1980).

These decisions preceded significant legislative changes in the employment status of probation officers and in the requirements imposed on judges at sentencing. New legislation bolsters the view that rights of constitutional dimension are at stake when sentencing is undertaken on the basis of inaccurate information.

Judges and probation officers have long enjoyed close working relationships, in part because probation officers were court employees. However, all probation personnel in the circuit courts and Detroit Recorder's Court became *state* employees for purposes of supervision and direction on April 1, 1980. MCL 791.223a; MSA 28.2293(1). The Department of Corrections now has the power to appoint, supervise, and remove probation officers. MCL 791.222; MSA 28.2292. An officer within that de-

partment, the assistant director in charge of probation, supervises the work of probation personnel and promulgates rules to regulate procedures for presentence investigation and reporting. MCL 791.223; MSA 28.2293. The relationship between the probation officer and a defendant or probationer is one of "confidence" which should remain "inviolate." MCL 791.229; MSA 28.2299.

This statutory scheme suggests that, while judges and probation officers are expected to interact, the probation officer should receive immediate supervision from the Department of Corrections rather than from individual judges. The explicit creation of a confidential relationship between the probation officer and the defendant also suggests that information from the defendant not be passed on to third parties except as prescribed by law.

The statute and administrative rules currently governing presentence investigation reports support this view of the relationship between the defendant, the probation officer, and the trial judge. When Thompson was sentenced in 1981, MCL 771.14; MSA 28.1144 provided:

> [T]he probation officer shall inquire into the antecedents, character, and circumstances of the person, and shall report in *writing* to the court. The presentence investigation report shall include an evaluation of and a prognosis for the person's adjustment in the community based on *factual information contained in the report.* The report shall include a *specific written recommendation* for disposition *based on the evaluation and other information as prescribed by the assistant director of the department of corrections in charge of probation.* [Emphasis added.]

The emphasized phrases anticipate inclusion of all relevant information in a *written* report.

Regulations in effect in 1981 required presentence investigation reports to include such things as a description of the offense, prior convictions, criminal charges pending, and a personnel profile including educational and employment history, social and medical history, economic circumstances, and "[o]ther information relevant to the offender's character and circumstances." 1979 AC, R 791.9910(1). In addition, "A source of information obtained on a promise of confidentiality, as well as a diagnostic opinion which might seriously disrupt a program of rehabilitation, *shall be listed separately* from the body of the report." (Emphasis added.) 1979 AC, R 791.9910(2). These rules again envision that all relevant information be imparted to a sentencing judge in written, not oral, form.

In 1982 the presentence investigation statute was amended to enhance the accuracy of presentence investigation reports. In describing the problem to be addressed by the amendments, the House Legislative Analysis echoes the words of this Court in *Malkowski:*

> Because of the importance of an offender's background in determining the length of his prison term under an indeterminate sentencing scheme and the fact that sentencing hearings, as such, are not held in Michigan, the PSI [presentence investigation report] plays a critical role in helping judges to decide on what sentence is appropriate for a particular offender. Indeed, the degree to which judges rely on the PSI was indicated by a recent survey, which found that 88 percent of the judges responding placed either "great weight" or "total weight" on the PSI in sentencing. . . . The significance of the PSI is further underscored by the fact that approximately 90 percent of those convicted of crimes plead guilty rather than go to trial; in such instances judges do not have impres-

sions gleaned from observing the defendant and listening to the presentation of evidence at trial.

As amended by 1982 PA 61, MCL 771.14; MSA 28.1144 currently provides:

> (3) The court may exempt from disclosure in the presentence investigation report information or a diagnostic opinion which might seriously disrupt a program of rehabilitation or sources of information obtained on a promise of confidentiality. If a part of the presentence investigation report is not disclosed, the court shall state on the record the reasons for its action and inform the defendant and his or her attorney that information has not been disclosed. The action of the court in exempting information from disclosure shall be subject to appellate review. Information or a diagnostic opinion exempted from disclosure pursuant to this subsection shall be specifically noted in the presentence investigation report.
>
> (4) The court shall permit the prosecutor, the defendant's attorney, and the defendant to review the presentence investigation report prior to sentencing.
>
> (5) At the time of sentencing, either party may challenge, on the record, the accuracy or relevancy of any information contained in the presentence investigation report. The court may order an adjournment to permit the parties to prepare a challenge or a response to a challenge. If the court finds that the challenged information is inaccurate or irrelevant, that finding shall be made a part of the record and the presentence investigation report shall be amended and the inaccurate or irrelevant information shall be stricken accordingly before the report is transmitted to the department of corrections.

See also MCR 6.101(K).

The statute has been designed to ensure to the

greatest extent possible that *written* records reflect the information on which a judge relies in making the sentencing decision and that the defendant or defense counsel has access to those written records. Criminal defendants are, no doubt, highly dependent upon their attorneys to gain access to these records and to explain inaccuracies or extenuating circumstances making the information unreliable. Ex parte communications between probation officers and judges, whether in written or oral form, threaten the ability of counsel to effectively challenge unreliable information and hence threaten a defendant's right to counsel.

We recognize that probation officers are an extremely valuable resource to judges, and do not seek to discourage what is accepted as healthy, general discourse between judges and probation officers. We seek, instead, to fashion a rule that will ensure that courts have the most accurate information possible when they undertake sentencing and that will not erode a defendant's right to counsel.

Different panels of the Court of Appeals have reached different conclusions about the standard to be applied in determining whether an ex parte communication between a sentencing judge and a probation officer violates a defendant's right to counsel. See *People v Oliver,* 90 Mich App 144, 149-150; 282 NW2d 262 (1979), *rev'd on other grounds* 407 Mich 857; 283 NW2d 502 (1979) (resentencing required where the trial court obtains information about defendant which is not equally available to defendant's counsel); *People v Black,* 103 Mich App 109, 115; 302 NW2d 612 (1981) (resentencing required whenever the sentencing judge communicates with the probation officer ex parte); *People v Beal,* 104 Mich App 159, 167; 304 NW2d 513 (1981) (following the rule in *Oliver*);

*People v Crawford,* 115 Mich App 516; 321 NW2d 717 (1982) (interpreting *Black* as creating a rebuttable presumption of prejudice when an ex parte communication occurs).

We are persuaded that resentencing is only necessary when the sentencing judge obtains information about the defendant from the probation officer that is not included in the written presentence report. A rule which presumes prejudice per se from the fact of communication is unnecessarily restrictive and would not tie the standard to the harm sought to be prevented. However, requiring defendant to prove actual prejudice in addition to proving the incompleteness of the presentence report would be too onerous a burden to place upon the exercise of the right to counsel. Requiring resentencing only where information communicated was not "available" to counsel does not confront the problem of notice. The fact that information is available to counsel does not mean that counsel is aware that the sentencing judge will rely on it in the sentencing decision. Unless all information used to sentence a defendant is included in the written presentence report, counsel has no opportunity to represent a defendant effectively.

The sentencing judge in this case did not obtain information about defendant Thompson which did not appear in the presentence report. The information exchanged between the judge and the probation officer concerned the disparity between the purported recommendation of a "maximum" term and the mathematical computation of that term. Resentencing is unnecessary under such circumstances.

## VI. CONCLUSION

For all the reasons above, we affirm the convic-

tions of and sentences received by all four defendants.

LEVIN and CAVANAGH, JJ., concurred with WILLIAMS, C.J.

BOYLE, J. (*concurring in part and dissenting in part*). While I join Chief Justice WILLIAMS' opinion in *Smith, Wallace,* and *Shoup,* and in most of that opinion in *Thompson,* I do not join the dictum with respect to the issue of ex parte communications between trial judges and probation officers.

The communication between the judge and the probation officer in *Thompson* involved merely the correction of a technical error. about the statutorily permitted maximum sentence, a correction which could have been performed even without the communication simply by referring to the statute. As Justice WILLIAMS recognizes, this communication was clearly. not improper. Consequently, the extended discussion of other kinds of communications between trial judges and probation officers, and about whether the right to counsel attaches to such communications, is unnecessary and clearly dictum.

Moreover, were the discussion of this issue not dictum, I would be constrained to disagree.

The probation officer "is an aide to the court. He is a resource person available for consultation, and to . . . prohibit discussion between the court and the officer would certainly diminish the effectiveness of the liaison." *People v Beal,* 104 Mich App 159, 167; 304 NW2d 513 (1981). Thus, "when the [probation] officer is preparing a presentence report he is acting as an arm of the court and this permits ex parte communication" between the court and the probation officer. *United States v Gonzales,* 765 F2d 1393, 1398 (CA 9, 1985).

As the United States Supreme Court has pointed out, "both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law." *Williams v New York,* 337 US 241, 246; 69 S Ct 1079; 93 L Ed 1337 (1949). As the Court pointed out,

> Modern changes in the treatment of offenders make it more necessary now than a century ago for observance of the distinctions in the evidential procedure in the trial and sentencing processes . . . . In general, these modern changes have not resulted in making the lot of offenders harder. On the contrary a strong motivating force for the changes has been the belief that by careful study of the lives and personalities of convicted offenders many could be less severely punished and restored sooner to complete freedom and useful citizenship. . . .
>
> Under the practice of individualizing punishments, investigational techniques have been given an important role. Probation workers['] . . . reports of their investigations . . . have been given a high value by conscientious judges who want to sentence persons on the best available information rather than on guesswork . . . . [*Id.* at 248-249.]

These considerations make it all the more important that the relationship between the sentencing judge and the probation officer not be undermined by the prohibition of such communications.

> Research has shown that an "arms-length" relationship between judge and [probation] officer is unsuited for the development of an accurate appraisal of the defendant. The presentence process is effective only if the relationship is characterized

by informality and mutual respect for the other's ability. To facilitate this relationship, most [federal] judges hold a presentence conference in chambers to discuss the presentence investigation and sentencing alternatives with the probation officer. [Fennell & Hall, *Due process at sentencing: An empirical and legal analysis of the disclosure of presentence reports in federal courts,* 93 Harv L R 1615, 1668 (1980). Seventy-five percent of federal district courts studied held such presentencing conferences. *Id.* at 1677.]

There is simply no basis for the assertion that a right to counsel attaches to communications between sentencing judges and probation officers. Indeed, a number of federal courts confronted with constitutional challenges to such communications between a sentencing judge and probation officers have held that "[i]t is not improper for the [sentencing] court to hold presentence conferences with the probation staff." *United States v Houston,* 745 F2d 333, 334 (CA 5, 1984). Accord *United States v Story,* 716 F2d 1088, 1090 (CA 6, 1983); *Tasby v United States,* 551 F2d 1139 (CA 8, 1977); *United States v Davis,* 527 F2d 1110, 1112 (CA 9, 1975); *United States v Hone,* 456 F2d 495 (CA 6, 1972). These courts are clearly correct.

First, the defendant's right to confront witnesses against him provides no basis for a right to counsel at these conferences. The probation officer is not a "witness against" the defendant. See *Williams v New York, supra.*

Second, such communications between judges and probation officers are not "ex parte" communications. The term "ex parte" means "[o]n one side only; by or for one party; done for, in behalf of, or on the application of, one party only." Black's Law Dictionary (5th ed), p 517. As the majority acknowledges, probation officers are not agents of

the prosecutor; consequently, a trial judge's communication with a probation officer is not a communication with "one party only" in the absence of the other party. Because the probation officer is not an adverse party to the defendant, but instead an "arm of the court," there is no basis for concluding that a Fifth or Sixth Amendment right to counsel attaches to such communications.

Third, while there is a due process right not to be sentenced on the basis of inaccurate information, *Townsend v Burke,* 334 US 736, 741; 68 S Ct 1252; 92 L Ed 1690 (1948); *Dorszynski v United States,* 418 US 424, 431, n 7, 443; 94 S Ct 3042; 41 L Ed 2d 855 (1974); *Gardner v Florida,* 430 US 349, 358; 97 S Ct 1197; 51 L Ed 2d 393 (1977), this right in no way implies that there is a concomitant right to counsel at such conferences. In Michigan, factual information upon which sentence is based must either be disclosed to the defendant and counsel, or the trial judge must inform them on the record that such information has been withheld for articulated reasons which conform with the statutory exceptions to the disclosure requirement. MCL 771.14; MSA 28.1144. Furthermore, the trial court must articulate the reasons for the sentence imposed on the record. *People v Coles,* 417 Mich 523; 339 NW2d 440 (1983). These procedures adequately ensure that the sentence is based on accurate factual information. Consequently, the presence of defense counsel at conferences between sentencing judges and probation officers is unnecessary to ensure the vindication of defendant's due process right to be sentenced on the basis of accurate information.

I also disagree with the analysis of the status of probation officers in this state. The MCL 791.229; MSA 28.2299 "relation of confidence between the probation officer and probationer or defendant

under investigation" is to be "inviolate" vis-à-vis
the public, but not as against the court, as the
language preceding this clause makes clear.

> *All records and reports* of investigations made
> by a probation officer, *and all case histories* of
> probationers *shall be* privileged or *confidential
> communications not open to public inspection.
> Judges* and probation officers *shall have access to
> the records, reports, and case histories.* [MCL
> 791.229; MSA 28.2299. Emphasis added.]

Furthermore, that 1979 PA 89 changed the status
of probation officers from *county* employees to
*state* employees, MCL 791.223a; MSA 28.2293(1),
certainly does not imply that the Legislature in-
tended to alter the long-established relationship
between probation officers and trial judges in the
state.

There is thus no basis for the claim that the
right to counsel attaches to communications be-
tween a probation officer and a sentencing judge.
On the other hand, there are compelling reasons
not to interfere with the long-established relation-
ship between trial judges and probation officers.
Consequently, I disagree on this issue.

RYAN, BRICKLEY, and RILEY, JJ., concurred with
BOYLE, J.

RILEY, J. (*concurring*). I write separately to ex-
plain what might be deemed an inconsistency
between Chief Justice WILLIAMS' opinion and my
opinion in *People v Bernard Smith,* 81 Mich App
561; 266 NW2d 40 (1978), *rev'd on other grounds*
406 Mich 926 (1979).

In *Bernard Smith,* the Court of Appeals held
that the offense of attempted larceny in a building

should be treated as a misdemeanor for purposes of determining the admissibility of such a conviction for impeachment purposes, despite the fact that, according to the Penal Code's general definitional provision, MCL 750.7; MSA 28.197, the crime is a felony. That result was reached because the specific provision of the Penal Code defining the crime made it a misdemeanor. MCL 750.92; MSA 28.287.

Thus, *Bernard Smith* dealt with a conflict between two provisions of one act—the Penal Code—unlike the cases decided today which involve provisions in the Penal Code and the Code of Criminal Procedure.