# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 26, 2015

Plaintiff-Appellee,

v

No. 320202
Cass Circuit Court

DARIUS LAMAR WILSON,

LC No. 13-010121-FH

Defendant-Appellant.

Before: DONOFRIO, P.J., and O'CONNELL and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals as of right his convictions for retaliation against a witness, MCL 750.122(8), assault with intent to do great bodily harm, MCL 750.84, and assault and battery, MCL 750.81(1). Defendant was sentenced as a second-offense habitual offender, MCL 769.10. Because defendant was properly sentenced as a second-offense habitual offender and because the trial court did not err in how it conducted voir dire of the potential jurors, we affirm.

## I. HABITUAL OFFENDER STATUS

Defendant, who was sentenced as a second-offense habitual offender, MCL 769.10, argues on appeal that he is entitled to have his habitual offender status vacated because the sentence enhancement was improperly based on a misdemeanor conviction. Because defendant never raised this issue at the trial court, the issue is unpreserved, and we review it for plain error affecting a defendant's substantial rights. *People v Callon*, 256 Mich App 312, 332; 662 NW2d 501 (2003).

Defendant's prior conviction was for attempted unlawful use of an automobile without authority. Unlawful use of an automobile without authority is punishable for "not more than 2 years." MCL 750.414. "Offenses punishable-by-more than one year of imprisonment are 'felonies' for purposes of the habitual-offender, probation, and consecutive sentencing statutes." *People v Smith*, 423 Mich 427, 445; 378 NW2d 384 (1985); see also MCL 761.1(g). Thus, with unlawful use of an automobile without authority being punishable for up to two years, it is properly classified as a "felony" for purposes of the habitual offender statutes. See *Smith*, 423 Mich at 445 ("Because misdemeanors punishable by two years of imprisonment fall under the 'felony' definition, they may be considered felonies for purposes of these statutes."). Defendant argues, however, that his crime—an *attempt* to commit that felony—cannot be relied on under the habitual offender statute.

-1-

The second-offense habitual offender statute, MCL 769.10, states in relevant part:

> (1) If a person has been convicted of a felony or an *attempt to commit a felony*, . . . and that person commits a subsequent felony within this state, the person shall be punished upon conviction of the subsequent felony and sentencing under section 13 of this chapter as follows: [Emphasis added.]

Defendant ignores the plain language of the statute that allows for habitual offender enhancement if the defendant previously attempted to commit a felony—regardless of what that attempt crime actually is categorized as. See *People v Slocum*, 156 Mich App 198, 200-201; 401 NW2d 271 (1986). Accordingly, even though defendant's attempt crime was a misdemeanor because it was punishable by a maximum of one year imprisonment, it nonetheless was an "attempt to commit a felony," and the trial court did not plainly err when it relied on defendant's previous conviction in sentencing defendant as a second-offense habitual offender.

## II. JURY VOIR DIRE

Defendant also argues on appeal that the lack of questioning by the trial court denied defendant a thorough and conscientious voir dire that would allow him an opportunity to exercise his peremptory and for cause challenges intelligently. We review this unpreserved issue for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

"A defendant who chooses a jury trial has an absolute right to a fair and impartial jury." *People v Tyburski*, 445 Mich 606, 618; 518 NW2d 441 (1994). "The purpose of voir dire is to elicit enough information for development of a rational basis for excluding those who are not impartial from the jury." *Id.* "Defendant does not have a right to have counsel conduct the voir dire, nor does he have a right to individual, sequestered voir dire. Neither does he have a right in every case to have the court ask questions submitted by counsel." *Id.* at 619. There are no "hard and fast rules" regarding what constitutes acceptable voir dire. *People v Sawyer*, 215 Mich App 183, 186; 545 NW2d 6 (1996). "Rather, trial courts must be allowed wide discretion in the *manner* they employ to achieve the goal of an impartial jury." *Id.* at 186-187 (quotation marks omitted). In reviewing the trial court's conduct, the test is whether the trial court conducted a voir dire "sufficiently probing . . . to uncover potential juror bias." *Tyburski*, 445 Mich at 609.

In this case, the trial court conducted voir dire. It asked whether any of the potential jurors knew defendant, the prosecutor, defense counsel, or any of the witnesses. If the jurors indicated that they knew one of the aforementioned parties, the trial court would follow up by questioning the individual juror about this knowledge and whether the relationship with the perspective party would affect the person's role as a juror. The trial court also asked the potential jurors, generally, whether they knew anything about the case or had read or heard anything about it; whether any of the jurors had a problem with the crimes charged, including witness retaliation; and whether they had any close connection with law enforcement that would affect their ability as a juror. If a juror responded affirmatively to any of the foregoing questions, the trial court would ask the juror whether his connection with the case would affect his ability to judge the case fairly. Additionally, the trial court covered the salient concepts of the presumption of innocence, burden of proof, and reasonable doubt.

On this record, we find the trial court's questions provided defendant with a reasonable opportunity to ascertain whether any of the potential jurors were subject to peremptory challenges or challenges for cause. By way of the trial court's questions, defendant gained knowledge of the potential jurors, which allowed him to intelligently exercise his peremptory challenges. See MCR 6.412(C)(1). The result of the voir dire process in this case was a panel that, in fact, appeared entirely capable of impartial and fair deliberations. We conclude that the trial court asked sufficiently probing questions to uncover potential juror bias and note that based on the questioning, defendant was able to use all five of his peremptory challenges to exclude jurors of his choice. Therefore, the trial court did not plainly err in how it conducted voir dire of the potential jurors.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that his counsel was ineffective for (1) failing to object to the trial court's sentencing of him as a second-offense habitual offender and (2) failing to object to the trial court questioning the potential jurors during voir dire. To demonstrate ineffective assistance of counsel, a defendant must show that trial counsel's performance was deficient (i.e. objectively unreasonable), and that there exists "a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001); *People v Pickens*, 446 Mich 298, 303; 521 NW2d 797 (1994).

However, as previously discussed, we have concluded that the trial court did not err in how it handled defendant's habitual offender status or how it handled jury voir dire. Thus, any failure to object on defense counsel's part cannot constitute deficient performance. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). Accordingly, defendant's claims of ineffective assistance necessarily fail.

Affirmed.

/s/ Pat M. Donofrio
/s/ Peter D. O'Connell
/s/ Amy Ronayne Krause