# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TARONE DEVON WASHINGTON,

Defendant-Appellant.

UNPUBLISHED
July 6, 2017

No. 330345
Berrien Circuit Court
LC No. 2015-001344-FH

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

PER CURIAM.

Defendant, Tarone Devon Washington, was convicted by a jury of keeping or maintaining a drug house, MCL 333.7405(1)(d);[1] possession of a firearm during the commission

---

[1] MCL 333.7405(1)(d) has been amended since the time of defendant's conviction. 2016 PA 49. However, the changes are minor and do not change the substantive meaning of the statute. MCL 333.7405(1)(d) currently provides:

(1) A person shall not do any of the following:

* * *

(d) Knowingly keep or maintain a store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place that is frequented by persons using controlled substances in violation of this article for the purpose of using controlled substances or that is used for keeping or selling controlled substances in violation of this article.

At the time of defendant's conviction, the statute provided:

(1) A person:

* * *

-1-

of a felony (felony-firearm), MCL 750.227b; possession of marijuana, MCL 333.7403(2)(d);[2] and receiving or concealing a stolen firearm, MCL 750.535b. Defendant was sentenced as a second-offense habitual offender, MCL 769.10, to 193 days in jail with credit for 193 days served for his keeping or maintaining a drug house conviction, two years' imprisonment for his felony-firearm conviction, 193 days in jail with credit for 193 days served for his possession of marijuana conviction, and 20 to 180 months' imprisonment with credit for 193 days served for his receiving or concealing a stolen firearm conviction. His keeping or maintaining a drug house, possession of marijuana, and receiving or concealing a stolen firearm are concurrent with each other, and his felony-firearm sentence is consecutive to those sentences. Defendant now appeals as of right. We affirm defendant's convictions for keeping or maintaining a drug house, receiving or concealing a stolen firearm, and possession of marijuana, but we vacate defendant's conviction for felony-firearm.

Defendant first argues on appeal that the evidence was insufficient to satisfy the possession and knowledge elements of each offense in this case. We address each of defendant's convictions in turn.

"Criminal defendants do not need to take any special steps to preserve a challenge to the sufficiency of the evidence." *People v Cain*, 238 Mich App 95, 116-117; 605 NW2d 28 (1999). However, defense counsel nonetheless moved for a directed verdict of acquittal on all counts at the conclusion of the prosecution's case-in-chief.

This Court "review[s] de novo a challenge to the sufficiency of the evidence." *People v Henry (After Remand)*, 305 Mich App 127, 142; 854 NW2d 114 (2014). "[W]hen determining whether sufficient evidence has been presented to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Meshell*, 265 Mich App 616, 621; 696 NW2d 754 (2005) (quotation marks and citations omitted; alteration in the original). "Statutory interpretation presents a question of law that [is] review[ed] de novo." *People v Konopka (On Remand)*, 309 Mich App 345, 356; 869 NW2d 651 (2015).

First, defendant argues that there was insufficient evidence of his control over the house and the continuity of his use of the house as a drug house, MCL 333.7405(1)(d) defines the

---

(d) Shall not knowingly keep or maintain a store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place, that is frequented by persons using controlled substances in violation of this article for the purpose of using controlled substances, or that is used for keeping or selling controlled substances in violation of this article.

[2] The amendments to MCL 333.7403 that were contained in 2015 PA 220 took effect on March 15, 2016, but the provisions relevant to the instant appeal were not changed in those amendments. 2015 PA 220.

crime of keeping or maintaining a drug house and provides that "[a] person shall not . . . [k]nowingly keep or maintain a store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place that is frequented by persons using controlled substances in violation of this article for the purpose of using controlled substances or that is used for keeping or selling controlled substances in violation of this article."

"The phrase 'keep or maintain' implies usage with some degree of continuity that can be deduced by actual observation of repeated acts or circumstantial evidence . . . ." *People v Thompson*, 477 Mich 146, 155; 730 NW2d 708 (2007). In *Thompson*, the Michigan Supreme Court cited the following language from an Alaska Court of Appeals case that further explains the "keep or maintain" element:

> "The state need not prove that the property was used for the exclusive purpose of keeping or distributing controlled substances, but such use must be a substantial purpose of the users of the property, and the use must be continuous to some degree; incidental use of the property for keeping or distributing drugs or a single, isolated occurrence of drug-related activity will not suffice. The purpose [for] which a person uses property and whether such use is continuous are issues of fact to be decided on the totality of the evidence of each case; the state is not required to prove more than a single specific incident involving the keeping or distribution of drugs if other evidence of continuity exists." [*Thompson*, 477 Mich at 156, quoting *Dawson v State*, 894 P2d 672, 678-679 (Alaska App, 1995).]

The *Thompson* Court stated with respect to the above quotation: "We find this interpretation persuasive and consistent with the interpretation that we have adopted after analyzing the words of the statute [MCL 333.7405(1)(d)]." *Thompson*, 477 Mich at 157.

Here, defendant was discovered in the southeast basement bedroom of the residence within minutes after the officers entered the residence to execute the search warrant. There was no evidence of any other person in the room, although five other individuals were located elsewhere in the house. Detective Ian Dodd testified that a confidential police informant had been used to make controlled buys of crack cocaine at 1291 Jennings Avenue and that he records the serial numbers or makes photocopies of the money to be used in a controlled transaction, i.e. the "buy money," before giving it to his confidential informant. Detective Dodd also testified that he maintains that information in his buy reports and tracks both the money and the transactions.

Additionally, there was testimony that crack pipes, syringes, digital scales, money, spoons with residue on them, and narcotics paraphernalia were found throughout the house during the search, including on the upstairs level and in the southeast basement bedroom with defendant. Specifically in the southeast basement bedroom, the officers found a small baggie of what was later determined to be marijuana on the bed, $2360 in cash, a duffle bag containing male gym clothing with a stolen firearm hidden inside, and a digital scale. The money that was recovered included $300 that was discovered in defendant's front left pants pocket; among that $300 was a 20-dollar bill that was identified as "buy money" from a previous controlled buy conducted at the residence. Officers also found a piece of mail from the Social Security Administration with defendant's name on it, although with an address that was different from the

address where the search occurred. Lab analyst John Rorabeck testified that he found what he determined to be heroin residue and cocaine residue on various pipes, glass tubes, spoons, and other drug paraphernalia discovered during the search. He also determined that the baggie found on the bed contained marijuana and that the digital scale found in the southeast basement bedroom had cocaine and marijuana residue on it.

Lieutenant James Zehm, who participated in the search and was also qualified as an expert on the sale and distribution of controlled substances, opined that the presence of marijuana, money, pipes, residue, and scales in a house indicates that it is a house for using and selling drugs. He also opined that the presence of buy money from previous transactions, along with the scale, indicated that sales of controlled substances were being made from the residence.

From this evidence, a rational jury could find that the buy money found in defendant's pants pocket demonstrated that he had been involved in a controlled buy with the confidential informant and that the plethora of items containing heroin, cocaine, or marijuana residue showed that a substantial and continuous use of the house was the keeping and using of drugs. *Id*. at 156-157. Furthermore, Detective Dodd testified that his investigation went back to October 2014 and that intelligence indicated that defendant was present in the house at that time. Additionally, a rational jury could conclude that defendant brought the Social Security Administration letter, which he had received at a different address, to the residence where he was apprehended because the letter was an important document and he was staying at the residence. Viewing the evidence in a light most favorable to the prosecution, a jury could rationally find that the totality of the circumstances established beyond a reasonable doubt that there was "continuity" and that defendant was involved in more than a single or isolated instance of drug-related activity. *Wolfe*, 440 Mich at 515; *Thompson*, 477 Mich at 156-157.

Defendant nonetheless challenges this element, maintaining that the evidence was insufficient to show that defendant had control over the property and that there was insufficient evidence of "continuity" because there must be more than a single incident of drug use or possession. However, "the state is not required to prove more than a single specific incident involving the keeping or distribution of drugs if other evidence of continuity exists," and continuity may be shown by circumstantial evidence. *Thompson*, 477 Mich at 155, 156 (quotation marks and citation omitted). Furthermore, the prosecution "is not obligated to disprove every reasonable theory consistent with innocence to discharge its responsibility; it need only convince the jury in the face of whatever contradictory evidence the defendant may provide." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (quotation marks and citation omitted).

Moreover, a rational jury could also find, when considering this evidence in a light most favorable to the prosecution, that the residence was "frequented by persons using controlled substances . . . for the purpose of using controlled substances" or that the residence was "used for keeping or selling controlled substances" based on the presence of six individuals and the many items containing cocaine, heroin, or marijuana residue; the money; and the baggie of marijuana that were seized during the search. *Wolfe*, 440 Mich at 515; MCL 333.7405(1)(d).

Finally, a rational jury could find that defendant kept the residence for this purpose "knowingly." "[B]ecause it can be difficult to prove a defendant's state of mind on issues such

as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008) (citations omitted). Considering the many items found throughout the house and the southeast basement bedroom with residue of various drugs on them, there was more than minimal circumstantial evidence that would permit a rational jury to conclude that defendant knew that drugs were being used and sold in the residence. *Id*. Viewing the evidence in a light most favorable to the prosecution and drawing all reasonable inferences in favor of the jury verdict, the evidence was sufficient to support defendant's conviction for keeping or maintaining a drug house. See *Wolfe*, 440 Mich at 515; *Meshell*, 265 Mich App at 621; MCL 333.7405(1)(d).

Next, defendant challenges the sufficiency of the evidence supporting his felony-firearm conviction. The felony-firearm statute, MCL 750.227b, provides in relevant part:

> (1) A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except a violation of section 223, 227, 227a, or 230, is guilty of a felony and shall be punished by imprisonment for 2 years.
>
> * * *
>
> (3) A term of imprisonment prescribed by this section is in addition to the sentence imposed for the conviction of the felony or the attempt to commit the felony and shall be served consecutively with and preceding any term of imprisonment imposed for the conviction of the felony or attempt to commit the felony.

A person must (1) "*carry* or *possess* the firearm," (2) "*when* committing or attempting to commit a felony" to be guilty of felony-firearm. *People v Burgenmeyer*, 461 Mich 431, 438; 606 NW2d 645 (2000). This Court has previously summarized the legal principles applicable to establishing that a defendant violated MCL 750.227b:

> The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony. One must carry or possess the firearm when committing or attempting to commit a felony. Possession of a firearm can be actual or constructive, joint or exclusive. [A] person has constructive possession if there is proximity to the article together with indicia of control. Put another way, a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant. Possession can be proved by circumstantial or direct evidence and is a factual question for the trier of fact. [*People v Johnson*, 293 Mich App 79, 82-83; 808 NW2d 815 (2011) (quotation marks and citations omitted; alteration in the original).]

Count 2 of the information charged that defendant "did carry or have in his/her possession a firearm, to-wit: a pistol, at the time he/she committed or attempted to commit a

felony, to-wit: Maintaining a Drug House." Furthermore, the trial court instructed the jury regarding the felony-firearm count during final instructions as follows:

> Count 2: The defendant is also charged with a separate crime of possessing a firearm at the time that he committed or attempted to commit the crime of maintaining or keeping a drug house.

> To prove this charge, the prosecutor must prove each of the following el— elements beyond a reasonable doubt:

> First, that the defendant committed or attempted to commit the crime of maintaining or keeping a drug house, which has been defined for you. It is not necessary, however, that the defendant be convicted of that crime.

> Second, that at the time the defendant committed or attempted to commit that crime he knowingly carried or possessed a firearm. It does not matter whether or not the gun was loaded. A firearm includes any weapon from which a dangerous object can be shot or propelled by the use of explosive, gas or air. A pistol is a firearm.

We ordered additional briefing on the question whether the underlying offense of maintaining a drug house, which by the specific terms of the statute is classified as a misdemeanor, constitutes a felony for purposes of the felony-firearm statute. Resolving this issue is a matter of statutory interpretation. "The fundamental task of statutory construction is to discover and give effect to the intent of the Legislature." *People v Borchard-Ruhland*, 460 Mich 278, 284; 597 NW2d 1 (1999). "The statute's words are the most reliable indicator of the Legislature's intent and should be interpreted based on their ordinary meaning and the context within which they are used in the statute." *People v Lowe*, 484 Mich 718, 721-722; 773 NW2d 1 (2009). "[J]udicial construction of unambiguous statutory language is not permitted." *People v Mitchell*, 301 Mich App 282, 291; 835 NW2d 615 (2013). "It is well settled that criminal statutes are to be strictly construed, absent a legislative statement to the contrary." *People v Boscaglia*, 419 Mich 556, 563; 357 NW2d 648 (1984).

MCL 333.7406 is the penalty provision for violations of MCL 333.7405 and provides as follows:

> A person who violates section 7405 may be punished by a civil fine of not more than $25,000.00 in a proceeding in the circuit court. However, if the violation is prosecuted by a criminal indictment alleging that the violation was committed knowingly or intentionally, and the trier of the fact specifically finds that the violation was committed knowingly or intentionally, the person is *guilty of a misdemeanor*, punishable by imprisonment for not more than 2 years, or a fine of not more than $25,000.00, or both. [Emphasis added.]

The offense of keeping or maintaining a drug house, MCL 333.7405(1)(d); MCL 333.7406, is located in the Public Health Code, MCL 333.1101 *et seq*. There is no definition of

the term "felony" in the Public Health Code. MCL 333.1299 provides that "[a] person who violates a provision of this code for which a penalty is not otherwise provided is guilty of a misdemeanor."

The felony-firearm statute, MCL 750.227b, is found in the Michigan Penal Code, MCL 750.1 *et seq*., and MCL 750.7 defines the term "felony" for purposes of the Penal Code as "an offense for which the offender, on conviction may be punished by death, or by imprisonment in state prison." An offense is considered a misdemeanor, for purposes of the Penal Code, if "any act or omission, not a felony, is punishable according to law, by a fine, penalty or forfeiture, and imprisonment, or by such fine, penalty or forfeiture, or imprisonment, in the discretion of the court," or if "the performance of any act is prohibited by this or any other statute, and no penalty for the violation of such statute is imposed, either in the same section containing such prohibition, or in any other section or statute." MCL 750.8; MCL 750.9.

Felonies and misdemeanors are defined differently in the Michigan Code of Criminal Procedure, MCL 760.1 through MCL 777.69. MCL 761.1(g) defines the term "felony" for purposes of the Code of Criminal Procedure as "a violation of a penal law of this state for which the offender, upon conviction, may be punished by death or by imprisonment for more than 1 year or an offense expressly designated by law to be a felony." MCL 761.1(h) defines the term "misdemeanor" for purposes of the Code of Criminal Procedure as "a violation of a penal law of this state that is not a felony or a violation of an order, rule, or regulation of a state agency that is punishable by imprisonment or a fine that is not a civil fine."

The Michigan Supreme Court has held that "[o]ffenses punishable-by-more than one year of imprisonment are 'felonies' for purposes of the habitual-offender, probation, and consecutive sentencing statutes," all of which are statutes within the Code of Criminal Procedure. *People v Smith*, 423 Mich 427, 439-440, 445; 378 NW2d 384 (1985); see also MCL 769.10; MCL 769.11 MCL 769.12 (habitual offender); MCL 771.2 (probation); MCL 768.7b (consecutive sentences). In concluding that misdemeanors that were punishable by two years' imprisonment under the Penal Code were "to be considered as misdemeanors for purposes of the Penal Code, but as felonies for purposes of the Code of Criminal Procedure's habitual-offender, probation, and consecutive sentencing statutes," the *Smith* Court reasoned that "[i]t is obvious that the Penal Code definitions apply only to the Penal Code," that "the definitions of the Code of Criminal Procedure are limited in application to that code," and that "[t]o apply the definition of misdemeanor in one statute to the operations of the other statute would defeat the purposes of the other statute." *Smith*, 423 Mich at 433, 434, 444, 445.

Similarly, "[a]lthough a misdemeanor that may result in two years' imprisonment may be deemed a felony for purposes of the habitual offender, probation, and consecutive sentencing provisions of the Code of Criminal Procedure, MCL 760.1 *et seq*; it cannot be deemed a felony for purposes of the Penal Code." *People v Williams*, 243 Mich App 333, 335; 620 NW2d 906 (2000). In *Williams*, we held that "[r]*esisting arrest is by definition a misdemeanor under the Penal Code*, MCL 750.479, *and, therefore, cannot serve as a felony for purposes of establishing the crime of absconding on a felony bond*." *Id*. (emphasis added). At the time that *Williams* was

decided, the resisting arrest statute provided that a person who violated the statute "shall be guilty of a misdemeanor, punishable by imprisonment in the state prison not more than 2 years, or by a fine of not more than 1,000 dollars." MCL 750.479 (West 2000).[3] In *Williams*, we vacated the defendant's conviction for absconding on a felony bond that had been based on his failure to appear for sentencing on his resisting arrest conviction. *Williams*, 243 Mich App at 334, 335.

Likewise, in *People v Baker*, 207 Mich App 224, 225; 523 NW2d 882 (1994), this Court held that "the trial court erred when it instructed the jury that resisting arrest could establish the felony element of the felony-firearm charge." The defendant in *Baker* "was originally charged with four counts of felonious assault, MCL 750.82, one count of resisting or obstructing a police officer, MCL 750.479, and one count of possession of a firearm during the commission of a felony, MCL 750.227b." *Id*. at 224-225. He was convicted of the resisting and obstructing a police officer and the felony-firearm charges, but he was convicted of four counts of reckless or wanton use of a firearm, MCL 752.863a, rather than the felonious assault charges. *Id*. In reaching its holding, the *Baker* Court reasoned that "the provisions of the Penal Code, MCL 750.1 *et seq*. govern whether resisting arrest is a felony for purposes of the felony-firearm statute" and that "[u]nder the Penal Code, *resisting arrest is a misdemeanor because it is specifically designated as such in MCL 750.479. Id*. at 225 (emphasis added). The *Baker* Court vacated the defendant's felony-firearm conviction and remanded for a new trial on that charge, stating that "the instructional error caused manifest injustice to defendant because, although the jury could have rendered inconsistent verdicts by using felonious assault as the underlying felony for felony-firearm, the instructional error pertained to a basic and controlling issue in the case." *Id*. at 225-226.

In the instant case, it appears that the only potential means of justifying the treatment of the keeping or maintaining a drug house offense as the underlying felony for a felony-firearm conviction is to apply the Code of Criminal Procedure's felony definition to turn what is otherwise a two-year misdemeanor into a felony. Keeping or maintaining a drug house is explicitly classified as a misdemeanor. Cf. *People v Wyrick*, 474 Mich 947; 707 NW2d 188 (2005) (holding that the double-penalty provision of the Public Health Code, MCL 333.7413(2), could not be used to convert the misdemeanor of possession of marijuana[4] into a felony because

---

[3] MCL 750.479 has since been amended by 2002 PA 270, and now makes it a felony to violate the statute. However, this change does not impact the reasoning employed by the *Williams* Court—that an offense which is defined as a two-year misdemeanor by the Penal Code cannot be treated as a felony for purposes of the Penal Code even though it may be treated as a felony for purposes of provisions of the Code of Criminal Procedure. See *Williams*, 243 Mich App at 335. Notably, *Smith* involved the joyriding statute, MCL 750.414, in addition to MCL 750.479. Joyriding is still a two-year misdemeanor. MCL 750.414 ("Any person who takes or uses without authority any motor vehicle without intent to steal the same, or who is a party to such unauthorized taking or using, is guilty of a misdemeanor punishable by imprisonment for not more than 2 years or a fine of not more than $1,500.00.").

[4] MCL 333.7403(2)(d).

"[t]he Public Health Code expressly designates marijuana possession as a misdemeanor" and "[t]he sentence enhancement statutes do not create new offenses," but "merely authorize trial courts to increase the length of time that a defendant must serve").[5] The felony definition in the Code of Criminal Procedure cannot be used to make a two-year misdemeanor offense that is located in a different act, such as the Penal Code or the Public Health Code into a felony; the offense of keeping or maintaining a drug house cannot be transformed into a felony for purposes of the felony-firearm statute. See *Smith*, 423 Mich at 433, 434, 444, 445; *Williams*, 243 Mich App at 335; *Baker*, 207 Mich App at 225.

Turning to our dissenting colleague's opinion, while we would agree with his conclusion if we were writing on a blank slate, we think that the dissent's reasoning is precisely backwards. The dissent endeavors to use the Supreme Court's decision in *Smith* to support a conclusion that crimes found outside the Penal Code are to be treated differently than crimes found within the Penal Code and that this trumps the conclusion that the specific overrules the general. This is not the takeaway from *Smith*. Indeed, *Smith* itself states that crimes labelled misdemeanors are misdemeanors for purposes of the Penal Code:

> The plain language of the statutes involved, considered in light of the purposes sought to be accomplished, leads us to conclude that the Legislature intended two-year misdemeanors to be considered as misdemeanors for purposes of the Penal Code, but as felonies for purposes of the Code of Criminal Procedure's habitual-offender, probation, and consecutive sentencing statutes. [*Smith*, 423 Mich at 434.]

We recognize that this point is arguably dicta. But we also recognize that they said it.

We are of the opinion that the lesson to be learned from *Smith* is not to draw a distinction between which code the underlying offenses are in, but to apply a consistent definition to the use of the term, in this case "felony," as used in a particular code, even where a different definition might apply in a different code. That is, the point in *Smith* is that the term "felony" may mean something different in the Code of Criminal Procedure than it does in the Penal Code. But, nonetheless, the term "felony" is to be used consistently in the Code of Criminal Procedure, consistent with the definition within that Code, regardless where the underlying offense is to be found.

With this in mind, returning to the definition of "felony" in MCL 750.7, were we writing on that blank slate, we would agree (but for a much different reason) with our dissenting colleague that a two-year misdemeanor qualifies as a felony for purposes of the felony-firearm statute. But that is without regard to whether the underlying offense is found in the Penal Code, the Public Health Code, or anywhere else. It is because the offense of felony-firearm is found in

---

[5] "Supreme Court orders that include a decision with an understandable rationale establish binding precedent." *People v Giovannini*, 271 Mich App 409, 414; 722 NW2d 237 (2006) (citing *People v Crall*, 444 Mich 463, 464 n 8; 510 NW2d 182 (1993); *People v Phillips (After Second Remand)*, 227 Mich App 28, 38 n 11; 575 NW2d 784 (1997)).

the Penal Code and, therefore, we should apply the definition of "felony" found in the Penal Code.[6]

But, as discussed above, we are not writing on a blank slate. There is binding precedent of this Court that says that two-year misdemeanors remain misdemeanors for purposes of the felony-firearm statute. If it were this alone, we would follow that precedent and certify a conflict. But given the statement by the Supreme Court in *Smith* that two-year misdemeanors are misdemeanors for purposes of the Penal Code, we think it best to leave it to the Supreme Court to resolve this issue. We do, however, urge the prosecutor to appeal this case and for the Supreme Court to grant leave and definitively resolve the status of two-year misdemeanors for purposes of the felony-firearm statute.

Therefore, we vacate defendant's felony-firearm conviction. See *Williams*, 243 Mich App at 335; *Baker*, 207 Mich App at 225-226. Because the only underlying charge to the felony-firearm offense was maintaining a drug house, and that is not a felony, there is no basis to retry defendant on the felony-firearm charge.

Next, defendant challenges the sufficiency of the evidence supporting his conviction for possession of marijuana. MCL 333.7403 provides in relevant part:

> (1) A person shall not knowingly or intentionally possess a controlled substance, a controlled substance analogue, or a prescription form unless the controlled substance, controlled substance analogue, or prescription form was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of the practitioner's professional practice, or except as otherwise authorized by this article.

> (2) A person who violates this section as to:

> * * *

> (d) Marihuana is guilty of a misdemeanor punishable by imprisonment for not more than 1 year or a fine of not more than $2,000.00, or both.

"A person need not have actual physical possession of a controlled substance to be guilty of possessing it." *Wolfe*, 440 Mich at 519-520. "Possession may be either actual or constructive, and may be joint as well as exclusive." *People v Fetterley*, 229 Mich App 511, 515; 583 NW2d 199 (1998). "The essential question is whether the defendant had dominion or control over the controlled substance." *Id*. While mere presence at the location where drugs are found is

---

[6] We note that is would also avoid the absurdity of treating some two-year misdemeanors as felonies for felony-firearm purposes, while treating others as misdemeanors, with the only distinction being in which code they are found.

insufficient to prove constructive possession, "circumstantial evidence and reasonable inferences arising from the evidence are sufficient to establish possession." *Id*.

In the instant case, defendant's only argument on appeal relating to his possession of marijuana conviction is that there was no evidence that defendant possessed the baggie of marijuana. However, defendant was found in the southeast basement bedroom with the baggie of marijuana, a digital scale that had marijuana and cocaine residue, a substantial sum of cash, and a firearm. Viewing the evidence in a light most favorable to the prosecution and making all reasonable inferences in support of the verdict, a rational jury could find that defendant had dominion or control over the marijuana and therefore possessed it. *Wolfe*, 440 Mich at 515, 519-520; *Meshell*, 265 Mich App at 621; *Fetterley*, 229 Mich App at 515. Defendant does not dispute the fact that the substance was marijuana, and laboratory analyst John Rorabeck testified that the plant material in the baggie tested positive for marijuana. Therefore, the evidence was sufficient to support defendant's conviction. *Wolfe*, 440 Mich at 515.

Next, defendant challenges the sufficiency of the evidence supporting his conviction for receiving or concealing a stolen firearm. MCL 750.535b(2) provides:

> A person who receives, conceals, stores, barters, sells, disposes of, pledges, or accepts as security for a loan a stolen firearm or stolen ammunition, knowing that the firearm or ammunition was stolen, is guilty of a felony, punishable by imprisonment for not more than 10 years or by a fine of not more than $5,000.00, or both.

The elements of receiving or concealing a stolen firearm are "that defendant (1) received, concealed, stored, bartered, sold, disposed of, pledged, or accepted as security for a loan (2) a stolen firearm or stolen ammunition (3) knowing that the firearm or ammunition was stolen." *People v Nutt*, 469 Mich 565, 593; 677 NW2d 1 (2004).

Here, Detective Sean Soulard testified that LEIN indicated that the firearm found in the duffle bag was stolen, and Eldon Lausch testified that a firearm matching the one recovered from the duffle bag was stolen from his home in August 2013. Thus, a rational jury could find that the firearm was stolen. MCL 750.535b(2); *Nutt*, 469 Mich at 593; *Wolfe*, 440 Mich at 515. Defendant does not contest this element on appeal. Additionally, there was testimony that the firearm was found hidden among male gym clothes in a duffle bag that was within approximately six feet of defendant when he was apprehended. Viewing the evidence in a light most favorable to the prosecution and drawing all reasonable inferences in support of the jury's verdict, a rational jury could find that defendant concealed the stolen weapon. MCL 750.535b(2); *Nutt*, 469 Mich at 593; *Wolfe*, 440 Mich at 515; *Meshell*, 265 Mich App 616, 621. Furthermore, given the circumstances, we are satisfied that the jury could also reasonably conclude that defendant knew that the firearm was stolen.

Consequently, we affirm defendant's receiving or concealing a stolen firearm conviction. *Mitchell*, 301 Mich App at 294.

Next, defendant raises the issue of prosecutorial error, arguing that the prosecutor made improper comments during closing arguments that violated defendant's right to remain silent and shifted the burden of proof. We disagree.

"In order to preserve an issue of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Here, this issue is preserved because defense counsel objected during the prosecutor's closing argument to the statements at issue on appeal. *Id*.

This Court "review[s] de novo claims of prosecutorial misconduct to determine whether defendant was denied a fair and impartial trial." *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003).

A prosecutor has a responsibility "to seek justice and not merely convict." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "[T]he test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *Id*. "A defendant's right to a fair trial may be violated when the prosecutor interjects issues broader than the guilt or innocence of the accused." *People v Rice (On Remand)*, 235 Mich App 429, 438; 597 NW2d 843 (1999). Prosecutorial error issues "are decided case by case, with the reviewing court examining the pertinent portion of the record and evaluating the prosecutor's remarks in context." *People v Akins*, 259 Mich App 545, 562; 675 NW2d 863 (2003) (quotation marks and citation omitted). "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial," and "[t]hey are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Unger*, 278 Mich App 210, 236; 749 NW2d 272 (2008). "[T]he prosecutor's comments must be considered in light of defense counsel's comments," and "[a]n otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument." *People v Watson*, 245 Mich App 572, 592-593; 629 NW2d 411 (2001) (quotation marks and citation omitted).

The Fifth Amendment to the United States Constitution protects a person's right against being "compelled in any criminal case to be a witness against himself." US Const, Am V; see also Const 1963, art 1, § 17. Thus, in a criminal case, a defendant "may elect to rely on the 'presumption of innocence,' " and "no reference or comment may be made regarding defendant's failure to testify." *People v Fields*, 450 Mich 94, 108-109; 538 NW2d 356 (1995). MCL 600.2159 also provides, "A defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect."

Additionally, "[a] prosecutor may not imply in closing argument that the defendant must prove something or present a reasonable explanation for damaging evidence because such an argument tends to shift the burden of proof." *People v Fyda*, 288 Mich App 446, 463-464; 793 NW2d 712 (2010). Likewise, "a prosecutor may not comment on the defendant's failure to present evidence because it is an attempt to shift the burden of proof." *Id*. at 464. However, it is permissible for the prosecutor to "observe that the evidence against the defendant is 'uncontroverted' or 'undisputed,' even if defendant is the only one who could have contradicted

-12-

the evidence." *Fields*, 450 Mich at 115 (citations omitted). "[A] prosecutor's remark that the evidence was uncontradicted or undisputed does not amount to improper comment on a defendant's failure to testify even though the defendant was the only person who could have provided contradictory testimony." *People v Guenther*, 188 Mich App 174, 177; 469 NW2d 59 (1991). Rather, such a remark "is proper in urging the weight to be given the testimony." *Id*.

In the instant case, defendant claims that the following statements by the prosecutor were improper. The statements at issue are reproduced below in their complete context, with the italicized portions representing the language specifically cited by defendant in his brief on appeal:

> [Y]ou have the *bill from the narcotics buy money*. And that, ladies and gentlemen, *really connects everything together*, because what that tells you is that the defendant — and mind you, the evidence was that this was *found on the—in his pocket*, along with the other mon—the other currency, the two hundred and— the other two hundred and eighty dollars. This is the—This is a narcotics—a—a bill that they kept track of using the serial number that was found as—in—in his possession. So what this *means is that he engaged in a transaction with a narcotics person that went in to make a nar—to conduct narco—a narcotics transaction. There is no other explanation for this.*

> I want you to also think about the fact that nowhere in the instructions — and I want you to listen carefully to the instructions and I want you to use your common sense, you will not hear in the instructions that we are required to have fingerprints. And they were concerned about this weapon and maintaining this weapon because it was a stolen weapon—reported stolen to another agency. Fingerprints are—is indirect evidence that someone had it because it's not showing that somebody had that in their hands, it's basically, circumstantially showing that the person at one point touched an item. You had the defendant in this case in the room with the stolen firearm, in a duffle bag, where there is narcotics *buy money* in—in his pants, there is money, there's money in a drawer, there's scales, there's marijuana on his bed, you have better than a fingerprint, you have the defendant in proximity and in the area where these items are accessible and he is under constructive possession of those items. And *what ties it together*; the narcotics money.

Defense counsel responded to this argument by the prosecutor as follows:

> [The prosecutor] talked about my client: no other explanation on how my client could have buy money on him other than a drug transaction took place. *He's not charged with a drug transaction, okay?*

Finally, defendant claims the following statements from the prosecutor's rebuttal argument also were continuations of the prosecutor's improper argument:

> Ladies and gentlemen, [defense counsel], he's also a fine attorney, wha— he—but he would like to tell you how to decide this case, at—with respect to all

-13-

of the counts, every single one of them. And, frankly, ladies and gentlemen, that's your job, that's your function as jurors. And I'm not asking for a pass. I'm asking for a pair—fair consideration of the evidence as it relates and as it—excuse me, I think I'm coming down with a cold—as it fits together because, I submit to you, it does, mainly, because of the buy money found on the person of the defendant, which still, after however long the closing argument was, maybe one sentence to that fact. How do you explain that? *Sure, we didn't charge with delivering or selling drugs but, obviously, if he had the buy money, he was engaged in illegal drug transactions involving police informants, and, that is part of maintaining a drug house, as—that is, keeping, maintaining the continuity of behavior in that drug house. Selling drugs, using drugs, that's what he's charged with.*

*But the evidence in this case goes back to the buy money, and you have not been given an explanation as to why the defendant, if he, in fact, was not keeping and maintaining that bedroom on Jennings as a place to main—to keep, and participate in illegal drug transactions, why would he have a bill used in Detective Dodd's investigation? The same investigation that had been ongoing for six months, involving a connection to [defendant], the same investigation that gave pro—probable cause for the issuance of a search warrant, the same investigation that, low and behold, when the search warrant is executed, lawfully, yes, a little bit hectically and crazy, yes, of course, it's not a game of tug-of-war, it's a narcotics investigation, and, low and behold, during the execution of that search warrant, who's in the southeast bedroom with the scales and the money and the stolen gun and the buy money, the defendant.*

These statements by the prosecutor were not improper. When viewed in context, *Akins*, 259 Mich App at 562, it is clear that the prosecutor was arguing that defendant's involvement in narcotics transactions was the only way to explain the presence of the buy money in his pants pocket. By stating that there was no other explanation, the prosecutor was arguing that the evidence was uncontradicted, which is not an improper comment on defendant's right to refrain from testifying. See *Fields*, 450 Mich at 115; *Guenther*, 188 Mich App at 177. Furthermore, the prosecutor's rebuttal argument was responsive to defense counsel's closing argument by explaining how establishing that defendant was involved in narcotics transactions via his connection to the buy money was not inconsequential to the case and was instead relevant to the keeping or maintaining a drug house charge. See *Watson*, 245 Mich App at 592-593.

Finally, the trial court instructed the jury that the lawyers' arguments were not evidence, that the defendant was not required to prove anything, that defendant had the absolute right not to testify, and that the jury could not consider the fact that defendant did not testify. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *Unger*, 278 Mich App at 235 (citations omitted); see also *People v Cross*, 202 Mich App 138, 143; 508 NW2d 144 (1993) ("The goal of a defense objection to improper remarks by the prosecutor is a curative instruction."); *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003) ("Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors.").

Reversal is not required on this ground. See *Watson*, 245 Mich App at 591-592 (concluding that reversal was not required where "the prosecutor's comment was isolated, . . . did not blatantly appeal to the jury's sympathy, . . . was not so inflammatory as to prejudice defendant," and the trial court provided an appropriate curative instruction).

Next, defendant argues that the habitual offender sentencing enhancement should not have been applied to him because the prosecution failed to file notice of its intent to seek a habitual offender sentencing enhancement within 21 days after defendant's arraignment, as required by MCL 769.13 and MCR 6.112(F). We disagree.

Defendant did not object in the trial court to the application of the habitual offender sentencing enhancement, and this issue is therefore unpreserved. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007).

Resolution of defendant's claim that the notice of the habitual offender enhancement was not timely pursuant to MCL 769.13 "involves the interpretation of a statute, which this Court reviews de novo." *People v Richards*, 315 Mich App 564, 588; 891 NW2d _911(2016). Unpreserved issues, whether non-constitutional or constitutional, are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

MCL 769.13 governs the notice procedures for seeking an enhanced sentence for habitual offenders pursuant to MCL 769.10, MCL 769.11, and MCL 769.12. MCL 769.13 provides in relevant part:

> (1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense *or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.*
>
> (2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1). The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. The prosecuting attorney shall file a written proof of service with the clerk of the court. [Emphasis added.]

Similarly, MCR 6.112(F) provides:

> **Notice of Intent to Seek Enhanced Sentence.** A notice of intent to seek an enhanced sentence pursuant to MCL 769.13 must list the prior convictions that may be relied upon for purposes of sentence enhancement. The notice must be filed within 21 days after the defendant's arraignment on the information charging the underlying offense *or, if arraignment is waived or eliminated as allowed*

*under MCR 6.113(E), within 21 days after the filing of the information charging the underlying offense.* [Emphasis added.]

MCR 6.113(E) provides:

> **Elimination of Arraignments.** A circuit court may submit to the State Court Administrator pursuant to MCR 8.112(B) a local administrative order that eliminates arraignment for a defendant represented by an attorney, provided other arrangements are made to give the defendant a copy of the information and any notice of intent to seek an enhanced sentence, as provided in MCR 6.112(F).

"Section 13 [i.e. MCL 769.13] specifically states that a notice of intent to seek sentence enhancement *shall* be filed with the court and served upon the defendant or his or her attorney within the twenty-one-day time limit," and this is a "a bright-line test for determining whether a prosecutor has filed a supplemental information promptly." *People v Morales*, 240 Mich App 571, 575; 618 NW2d 10 (2000) (quotation marks and citation omitted). In other words, the statute requires that the notice given by the prosecutor "must be given within a strict time frame." *Id*. at 586. When the prosecution adds a habitual offender enhancement without adhering to the 21-day time frame provided by the statute, that habitual offender sentence should be reversed and the matter should be remanded for resentencing. *Id*. at 573-574, 586 (reversing defendant's fourth-offense habitual offender sentence and remanding for resentencing as a second-offense habitual offender where notice of the second-offense habitual enhancement was timely filed but notice of the fourth-offense habitual enhancement was untimely). However, in another case where the defendant argued that the prosecution violated the 21-day rule of MCL 769.13, this Court stated that "there is a distinction between an arraignment on the information and an arraignment on the warrant or complaint," noting the difference between MCR 6.104 ("Arraignment on the Warrant or Complaint")[7] and MCR 6.113 ("The Arraignment on the Indictment or Information")." *Richards*, 315 Mich App at 588-589 (rejecting defendant's argument where the prosecution filed an amended information containing a fourth-offense habitual offender notice on the same day that the defendant was arraigned on the information in the circuit court).

In the instant case, a felony warrant and a felony complaint were filed on April 1, 2015. Defendant was arraigned on the charges on April 2, 2015. An amended felony warrant and an amended felony complaint were filed on April 5, 2015. On April 21, 2015, the preliminary

---

[7] MCR 6.104(A) provides:

> **(A) Arraignment Without Unnecessary Delay.** Unless released beforehand, an arrested person must be taken without unnecessary delay before a court for arraignment in accordance with the provisions of this rule, or must be arraigned without unnecessary delay by use of two-way interactive video technology in accordance with MCR 6.006(A).

examination was held. At the preliminary examination, the following exchange occurred regarding defendant's prior felony conviction:

> *The Court*: And do we have any supplementals to file in this matter?
>
> [*Prosecutor*]: I don't believe that we do, your Honor.
>
> *The Court*: There is a fleeing and eluding third degree, so there is one here in the court file from Berrien County. I don't know if there are any others. So with that, do you waive filing of the information and any reading thereof, [defense counsel]?
>
> [*Defense Counsel*]: Yes.
>
> *The Court*: Okay. The defendant has then entered a plea of not guilty in writing. It's been signed by the defendant, by his counsel, I'm signing it. And I'm placing it in the court file at this time.

A copy of defendant's written plea of not guilty without arraignment, pursuant to MCR 6.113, was filed on April 21, 2015. The felony information was filed on May 13, 2015, and it included a notice that defendant was subject to the enhancement provisions in MCL 769.10 as a result of his previous felony conviction for third-degree fleeing and eluding.[8] A copy of the information was served on defense counsel on May 13, 2015.

Defendant's argument on appeal fails because defendant neglected to note the distinction between the arraignment on the complaint and the arraignment on the information. Defendant was only arraigned on the warrant and complaint at the April 2, 2015 proceeding. There was no information at that point; defendant had not yet had or waived his preliminary examination, which was held on April 21, 2015, and an information may not be filed until a preliminary examination is either conducted or waived. MCR 6.112(B) ("A prosecution must be based on an information or an indictment. Unless the defendant is a fugitive from justice, the prosecutor may not file an information until the defendant has had or waives a preliminary examination."). Defendant clearly waived his arraignment on the information, as he is permitted to do under MCR 6.113(E), through defense counsel's statement at the preliminary examination and the written not guilty plea without arraignment that was signed by defendant. Consequently, the prosecution was only required to file notice of its intent to seek a habitual offender sentencing enhancement "within 21 days after the filing of the information charging the underlying offense." MCL 769.13(1); MCR 6.112(F). The prosecution filed the felony information on May 13, 2015, and the information included a notice that defendant was subject to the enhancement provisions in MCL 769.10. Furthermore, the information was served on defense counsel on May 13, 2015, as well. Therefore, the prosecution clearly filed its notice within 21-days of filing the information and complied with the requirements of MCL 769.13 and MCR 6.112(F).

---

[8] MCL 750.479a(3).

Defendant's appellate argument is erroneously based on the time between his arraignment on the complaint and the filing of the information. See *Richards*, 315 Mich App at 588-589.

Defendant argues in the alternative that he received ineffective assistance of counsel based on defense counsel's failure to object to the application of the habitual offender enhancement on the grounds that the prosecution did not comply with the notice requirements. However, there was no violation of the notice requirements in MCL 769.13 and MCR 6.112(F), so there was no objection to be made on this ground. "Counsel is not ineffective for failing to make a futile objection." *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004). Additionally, defendant requests a remand for a *Ginther*[9] hearing. We previously denied defendant's motion to remand.[10] However, in light of our conclusion that there was no violation of the notice requirements and no objection to be made by defense counsel on this ground, defendant also has failed to demonstrate "any issue for which further factual development would advance his claim," and an evidentiary hearing is unnecessary. See *People v Chapo*, 283 Mich App 360, 368-369; 770 NW2d 68 (2009) (limiting review of an ineffective assistance of counsel claim to the existing record where the Court of Appeals had previously denied the defendant's motion to remand for a *Ginther* hearing and the defendant did not demonstrate that further factual development was necessary).

Next, defendant argues that his presentence investigation report (PSIR) contains inaccurate and irrelevant information that he is entitled to have corrected.

"A challenge to the validity of information contained in the PSIR may be raised at sentencing, in a proper motion for resentencing, or in a proper motion to remand." *People v Lloyd*, 284 Mich App 703, 706; 774 NW2d 347 (2009). Here, defendant preserved his challenge to the accuracy of the information in the PSIR through a motion to remand based on this ground that was filed in this Court and which we denied. *Id*.[11]

"When a defendant challenges the accuracy of the information, the defendant bears the burden of going forward with an effective challenge. If an effective challenge has been raised, the prosecution must prove by a preponderance of the evidence that the facts are as the prosecution asserts." *Id*. at 705.

MCL 771.14(6) provides:

> (6) At the time of sentencing, either party may challenge, on the record, the accuracy or relevancy of any information contained in the presentence investigation report. The court may order an adjournment to permit the parties to prepare a challenge or a response to a challenge. If the court finds on the record

---

[9] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

[10] *People v Washington*, unpublished order of the Court of Appeals, entered September 21, 2016 (Docket No. 330345).

[11] See also *Washington*, unpub order.

that the challenged information is inaccurate or irrelevant, that finding shall be made a part of the record, the presentence investigation report shall be amended, and the inaccurate or irrelevant information shall be stricken accordingly before the report is transmitted to the department of corrections.

MCR 6.425(E)(2) provides:

(2) *Resolution of Challenges*. If any information in the presentence report is challenged, the court must allow the parties to be heard regarding the challenge, and make a finding with respect to the challenge or determine that a finding is unnecessary because it will not take the challenged information into account in sentencing. If the court finds merit in the challenge or determines that it will not take the challenged information into account in sentencing, it must direct the probation officer to

(a) correct or delete the challenged information in the report, whichever is appropriate, and

(b) provide defendant's lawyer with an opportunity to review the corrected report before it is sent to the Department of Corrections.

MCR 6.425(A)(1)(b) provides:

**(A) Presentence Report; Contents.**

(1) Prior to sentencing, the probation officer must investigate the defendant's background and character, verify material information, and report in writing the results of the investigation to the court. The report must be succinct and, depending on the circumstances, include:

* * *

(b) a complete description of the offense and the circumstances surrounding it[.]

"[I]t is imperative that the PSIR accurately reflect the sentencing judge's determination regarding the information contained in the report" because "[t]he Department of Corrections relies on the information contained in the PSIR to make critical decisions regarding a defendant's status." *Lloyd*, 284 Mich App at 705-706. "Once a challenge to the accuracy of the PSIR has been alleged, the trial court is required to respond." *Id*. at 705. "The sentencing court must respond to challenges to the accuracy of information in a presentence report; however, the court has wide latitude in responding to these challenges." *Spanke*, 254 Mich App at 648. "The court may determine the accuracy of the information, accept the defendant's version, or simply disregard the challenged information." *Id*. Before sending the PSIR to the Department of Corrections, the court must strike from the PSIR any challenged information that it finds to be

inaccurate or irrelevant. *Id*. "Although the Michigan Rules of Evidence do not apply at a sentencing proceeding, the defendant must be afforded an adequate opportunity to rebut any matter he or she believes to be inaccurate." *People v Waclawski*, 286 Mich App 634, 690; 780 NW2d 321 (2009).

Here, defendant argues that five corrections should be made to the PSIR. First, defendant requests that "Plea" be changed to "Trial" on the cover page of the PSIR because defendant was convicted by trial, not by plea. This is clearly a clerical error as defendant was convicted after a jury trial. On remand, the trial court should correct this clerical error. MCR 7.216(A)(7); *People v Harris*, 190 Mich App 652, 662; 476 NW2d 767 (1991). However, we find that defendant's remaining challenges are without merit. The other statements in the PSIR that defendant challenges were drawn from the police report and refer to "residency paperwork" for defendant, allegations that defendant was selling drugs, and allegations that defendant lived in the southeast basement bedroom. Defendant does not provide any binding authority for the proposition that information from police reports cannot be used in presentence reports. Defendant's reliance on *People v Rockey*, 237 Mich App 74, 79-81; 601 NW2d 887 (1999), is misplaced because the issue in that case was whether a departure sentence, which was based on information in the PSIR that "far exceed[ed] the proofs adduced at the jury trial," was proportionate; the issue was not whether information from a police report could be included in the PSIR in the first instance.

Moreover, there is evidence in the instant case to support the information in the PSIR. The presence of defendant in the southeast basement bedroom when the search warrant was executed, along with male gym clothes in the duffle bag, clothes in the dresser, and sheets on the bed support a conclusion that defendant was living in the southeast basement bedroom. There was testimony at trial about the piece of mail with defendant's name on it that was found in the southeast basement bedroom, which was referred to as a "residency paper." The presence of the digital scale with cocaine and marijuana residue in the southeast bedroom, along with the substantial sum of cash, which included buy money from a controlled purchase conducted by a confidential police informant, support a conclusion that defendant was involved in selling drugs. Thus, a preponderance of the evidence at trial supports the information that defendant challenges. *Lloyd*, 284 Mich App at 705. Furthermore, the PSIR must include "a complete description of the offense and the circumstances surrounding it," MCR 6.425(A)(1)(b), and the statements challenged by defendant all relate to the findings of the investigation in this case. Therefore the challenged statements need not be stricken from the PSIR because they are not irrelevant or inaccurate. MCL 771.14(6); *Spanke*, 254 Mich App at 648.

Finally, while defendant asserts as an alternative ground for remand that defense counsel provided ineffective assistance by failing to object to the alleged inaccuracies in the PSIR, defendant does not provide any analysis or supporting authority for this argument. An issue is abandoned if an appellant "fail[s] to properly address the merits of his assertion of error." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998).

We vacate defendant's conviction for felony-firearm and we affirm defendant's remaining convictions. We remand for proceedings consistent with this opinion. On remand, the clerical error in defendant's PSIR should be corrected. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ David H. Sawyer