*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
December 17, 2020

Plaintiff-Appellee,

v

No. 344325
Kalamazoo Circuit Court

VICTOR PEERY,

LC No. 2016-000285-FC

Defendant-Appellant.

Before: FORT HOOD, P.J., and SAWYER and SERVITTO, JJ.

PER CURIAM.

Defendant, Victor Peery, appeals by leave granted his sentences for his convictions of assault with intent to commit murder, MCL 750.83; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant pleaded guilty, and the trial court sentenced defendant, as a fourth-offense habitual offender, MCL 769.12, to 15 to 40 years' imprisonment for the assault conviction and 2 years' imprisonment for the felony-firearm conviction. The trial court ordered these sentences to run consecutively to each other and consecutively to a sentence that defendant was serving for a probation violation. It is this latter part of the sentencing order with which defendant takes issue. However, we affirm.

In 2015, defendant was convicted of being a felon in possession of a firearm (felon-in-possession), MCL 750.224f. The trial court sentenced defendant to jail and then 36 months' probation, which included a stay in Kalamazoo Probation Enhancement Program (KPEP). After defendant served his jail sentence, KPEP staff transferred him to a KPEP facility. Defendant remained at the facility for a few minutes before leaving. After leaving KPEP, he punched, choked, and smothered his girlfriend. He also repeatedly hit his girlfriend in the head with a gun and shot her three times. Defendant then escaped to Indiana where he committed additional offenses before he was apprehended.

The trial court sentenced defendant to 34 to 128 months' imprisonment for violating probation. Defendant was also charged with assault with intent to commit murder; four counts of felony-firearm; felon-in-possession; assault with a dangerous weapon, MCL 750.82; and domestic violence, MCL 750.81(2). Defendant ultimately pleaded guilty to one count of felony-firearm and

-1-

one count of assault with intent to commit murder as a fourth-offense habitual offender and was sentenced as stated earlier. Again, the trial court ordered these sentences to run consecutively to each other and consecutively to the sentence defendant received for violating probation.

Defendant filed a delayed application for leave to appeal in this Court in which he argued that the trial court was not permitted to sentence him to consecutive sentences pursuant to MCL 768.7a(1). After this Court denied defendant's delayed application,[1] defendant filed an application for leave to appeal in the Michigan Supreme Court. The Supreme Court ordered that this case be remanded to this Court "for consideration, as on leave granted, of whether MCL 768.7a authorized the trial court to require the sentences in this case to run consecutively with the defendant's sentence for violating probation in an earlier case." *People v Peery*, 503 Mich 1039 (2019). The Supreme Court specifically ordered this Court to address the following:

> (1) whether the definition of 'prison' found in MCL 750.193(2) controls whether a facility is a 'penal or reformatory institution' for purposes of MCL 768.7a(1), even though the two statutes appear in different codes, compare *People v Johnson*, 96 Mich App 84, 86-88 (1980), and *People v Parker*, 319 Mich App 410 (2017), with *People v Washington*, 501 Mich 342, 357 (2018); (2) if so, whether the Kalamazoo Probation Enhancement Program (KPEP) falls within that definition of 'prison'; and (3) if not, whether the Legislature intended for a program like KPEP to be treated as a 'penal or reformatory institution' for purposes of MCL 768.7a. [*Id*.]

This Court thereafter granted the prosecution's motion to remand this case for an evidentiary hearing to learn more information on KPEP and defendant's relationship with KPEP.[2] At the evidentiary hearing, William DeBoer, the CEO of KPEP, and Michael Penny, defendant's probationary agent testified.

Both defendant and the prosecution contend that the definition of the word "prison" found in MCL 750.193(2) does not control the meaning of the term "penal or reformatory institution" in MCL 768.7a(1). We agree.

This Court reviews de novo questions of law. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). "Whether a consecutive sentence may be imposed is a question of statutory interpretation that we review de novo." *People v Parker*, 319 Mich App 410, 414; 901 NW2d 632 (2017). Additionally, "[w]hether a defendant's conduct falls within the scope of a penal statute is a question of statutory interpretation that is reviewed de novo." *People v Rea*, 500 Mich 422, 427; 902 NW2d 362 (2017).

This Court interprets statutes pursuant to the Legislature's intent. *Id*. The plain language of a statute is "[t]he most reliable evidence" of the Legislature's intent. *Id*. (quotation marks and

---

[1] *People v Peery*, unpublished order of the Court of Appeals, entered August 1, 2018 (Docket No. 344325).

[2] *People v Peery*, unpublished order of the Court of Appeals, entered December 10, 2019 (Docket No. 344325).

-2-

citation omitted).  Additionally, when this Court interprets a statute, this Court must "give effect to every word, phrase, and clause and avoid an interpretation that would render any part of the statute surplusage or nugatory."  *Id*. at 427-428 (quotation marks and citation omitted). "Nontechnical words and phrases should be interpreted according to the common and approved usage of the language."  *Id*. at 428 (quotation marks and citation omitted).  This Court may consult a dictionary "when a word or phrase is not defined by the statute in question . . . to determine the plain and ordinary meaning of the word or phrase."  *Id*.

MCL 750.193(1), which is part of the Michigan Penal Code, MCL 750.1 *et seq*., provides the prison escape statute and states as follows:

> A person imprisoned in a prison of this state who breaks prison and escapes, breaks prison though an escape is not actually made, escapes, leaves the prison without being discharged by due process of law, attempts to break prison, or attempts to escape from prison, is guilty of a felony, punishable by further imprisonment for not more than 5 years.  The term of the further imprisonment shall be served after the termination, pursuant to law, of the sentence or sentences then being served.  A prisoner who breaks prison, escapes, attempts to break prison, or attempts to escape, shall be charged with that offense and tried in the courts of the county in which the prison or penal facility to which the prisoner was committed or transferred is located at the time of the breaking, escape, or attempt to break or escape.

MCL 750.193(2) provides the following definition of the word "prison":

> As used in this section, "prison" means a facility that houses prisoners committed to the jurisdiction of the department of corrections and includes the grounds, farm, shop, road camp, or place of employment operated by the facility or under control of the officers of the facility, the department of corrections, a police officer of this state, or any other person authorized by the department of corrections to have a prisoner under care, custody, or supervision, either in a facility or outside a facility, whether for the purpose of work, medical care, or any other reason.

As part of the Penal Code, MCL 750.193 punishes the actual act of escaping or "breaking prison."[3] Notably, in this case, defendant was not charged or convicted under MCL 750.193.

MCL 768.7a, which is part of the Code of Criminal Procedure, MCL 760.1 *et seq*., provides for consecutive sentencing in certain situations when a person escapes a "penal or reformatory institution," and it specifically states as follows:

> (1) A person who is incarcerated in a penal or reformatory institution in this state, or who escapes from such an institution, and who commits a crime during that incarceration or escape which is punishable by imprisonment in a penal or

---

[3]  As the title to the Penal Code, MCL 750.1 *et seq.*, states, its purpose is "to define crimes and prescribe the penalties . . . ."

-3-

reformatory institution in this state shall, upon conviction of that crime, be sentenced as provided by law. The term of imprisonment imposed for the crime shall begin to run at the expiration of the term or terms of imprisonment which the person is serving or has become liable to serve in a penal or reformatory institution in this state.

(2) If a person is convicted and sentenced to a term of imprisonment for a felony committed while the person was on parole from a sentence for a previous offense, the term of imprisonment imposed for the later offense shall begin to run at the expiration of the remaining portion of the term of imprisonment imposed for the previous offense.

"According to the plain language of MCL 768.7a, a person is subject to consecutive sentencing when that person is convicted of a crime committed during the person's incarceration in a penal or reformatory institution or during the person's escape or parole from such an institution." *Parker*, 319 Mich App at 415. Trial courts "may only impose a consecutive sentence if specifically authorized by statute." *Id*. "The purpose of a consecutive sentencing statute is to deter persons convicted of one crime from committing other crimes by removing the security of concurrent sentencing." *Id*. at 414. This Court should construe consecutive sentencing statutes "liberally in order to achieve the deterrent effect intended by the Legislature." *Id*. at 414-415.

MCL 768.7a(1) uses the term "penal or reformatory institution" without defining that term or the terms "penal institution" or "reformatory institution." In fact, the definitions for those terms are not found anywhere in the Code of Criminal Procedure. However, MCL 750.193(2) provides the definition of the term "prison" for the prison escape statute in MCL 750.193(1). And this Court has a long history of utilizing the definition of the word "prison" in MCL 750.193(1) when determining whether a certain institution falls within the term "penal or reformatory institution."

In *People v Mayes*, 95 Mich App 188, 189; 290 NW2d 119 (1980), the defendant argued that he was not subject to consecutive sentencing pursuant to MCL 768.7a(1), as amended by 1976 PA 184, because a halfway house did not qualify as a "penal or reformatory institution." This Court recognized that in *People v Smith (On Rehearing)*, 89 Mich App 478, 489; 280 NW2d 862 (1979), it defined prison "for purposes of the escape statute, MCL 750.193," as "any grounds under the control of persons authorized by the corrections department to have inmates under their care, custody or supervision is a prison." *Mayes*, 95 Mich App at 189-190. It therefore concluded that a halfway house was "a prison for purposes of the escape statute." *Id*. at 190. This Court then held "that a crime committed while on leave from a halfway house is committed during one's incarceration in a penal institution." *Id*. This Court held that a contrary holding would be contrary to the Legislature's intent "to create a disincentive for committing criminal acts by those serving prison sentences." *Id*.

In *People v Johnson*, 96 Mich App 84, 85-86; 292 NW2d 489 (1980), the defendant argued that a community corrections center program did not qualify as a "penal or reformatory institution" under MCL 768.7a(1), as amended by 1976 PA 184. This Court recognized that there were no cases that had determined whether a community corrections program qualified as a "penal or reformatory institution" under MCL 768.7a(1). This Court also recognized that MCL 750.193, as amended by 1967 PA 103, dealt with prison escapes and held that it "may be read in pari materia

with the provisions of MCL 768.7a." *Id*. at 86. This Court held that MCL 750.193(2) specifically included "residential centers" in the definition of "prison."[4] *Id*. at 87. This Court also recognized that YMCA corrections program, a hospital, and halfway houses all had been recognized as prisons under MCL 750.193(2). *Id*. at 87-88. This Court then upheld the "appropriateness of the trial court's consecutive sentencing[.]" *Id*. at 88. Since *Mayes* and *Johnson*, this Court has issued a series of decisions relying directly or indirectly on their holdings. See *People v Dukes*, 198 Mich App 569, 570, 570-571; 499 NW2d 389 (1993); *People v Kirkland*, 172 Mich App 735, 736-737; 432 NW2d 422 (1988); *People v Sheridan*, 141 Mich App 770, 772-775; 367 NW2d 450 (1985); *People v Jennings*, 121 Mich App 318, 319; 329 NW2d 25 (1982); *People v Lakin*, 118 Mich App 471, 473-474; 325 NW2d 460 (1982); *People v Hegwood*, 109 Mich App 438, 442; 311 NW2d 383 (1981).

In the meantime, the Supreme Court issued *People v Smith*, 423 Mich 427; 378 NW2d 384 (1985). In *Smith*, 423 Mich at 437, the defendant argued that the Penal Code's definition of "misdemeanors" conflicted with the Code of Criminal Procedure's definition of "felonies" and that the Penal Code label should control. The Court held that "[s]tatutes which relate to the same persons or things, or which have a common purpose, are to be read *in pari materia*, and a strict construction will not be given to one statute where doing so would defeat the main purpose of another on the same subject." *Id*. at 441-442. The Court also held that "[w]hile the Penal Code and the Code of Criminal Procedure relate generally to the same thing and must therefore be read *in pari materia*, the two codes were separately enacted and have distinct purposes." *Id*. at 442. The Court ruled that the Penal Code defined crimes and proscribed penalties for crimes, and the Code of Criminal Procedure codified laws for criminal procedure. *Id*. It also recognized that "[e]ach code has its own definitions of 'misdemeanor' and 'felony' in order to more effectively promote the distinct purposes of each." *Id*. Although "[t]he Penal Code's definitions serve to describe the grade of each offense and, in some instances, to prescribe the penalty for the offense," "[t]he definitions in the Code of Criminal Procedure govern which procedural protections and which collateral consequences of conviction attach to a given offense." *Id*. at 442-443. The Court then held that "[i]t [was] obvious that the Penal Code definitions apply only to the Penal Code," and that "the definitions of the Code of Criminal Procedure are limited in application to that code." *Id*. at 445. "To apply the definition of misdemeanor in one statute to the operations of the other statute would defeat the purposes of the other statute." *Id*.

Afterward, in 2017, this Court issued *Parker*. In *Parker*, 319 Mich App at 413, the defendant was serving a prison sentence when the MDOC "erroneously released her into the community in 2011." While the defendant was released, in 2013, she committed two other offenses and pleaded guilty to the charges. *Id*. Pursuant to MCL 768.7a, the trial court sentenced the defendant to serve her sentences for the offenses she committed in 2013 "consecutively to the completion of her sentences from 2010." *Id*. at 414. The "defendant argue[d] that the trial court erred by ordering her current sentences to run consecutively to her sentences from 2010 because the consecutive sentencing provisions of MCL 768.7a did not apply to her situation," and this

---

[4] MCL 750.193(2), as amended by 1998 PA 510, the most recent version of MCL 750.193, the version which is analyzed in this case, no longer especially identifies "residential centers" as prisons.

Court agreed. *Id*. This Court held that "[i]t [was] undisputed that defendant was neither an escapee nor a parolee when she committed the 2013 offenses," and "[t]herefore, the question before this Court [was] whether defendant was 'incarcerated in a penal or reformatory institution' at the time of the 2013 offenses, thus warranting imposition of a consecutive sentence pursuant to MCL 768.7a(1)." *Id*. at 415-416. This Court held that "[i]t [was] undisputed that defendant was not literally incarcerated at the time she committed the crimes charged in this case." *Id*. at 416. "Therefore, interpreting MCL 768.7a(1) according to its plain language leads to the conclusion that defendant was not subject to its provisions, and the trial court improperly ordered her to serve the sentences imposed for her current crimes consecutively to those imposed for her 2010 convictions." *Id*.

This Court also recognized that the definition of "penal or reformatory institution" had a broad definition, which "include[d] any grounds under the control of any person authorized by the Department of Corrections to have a prison inmate under care, custody or supervision either in an institution or outside an institution." *Id*. (quotation marks and citation omitted). This meant that "[l]iteral confinement, therefore, is not a controlling factor if the person continues to be under the control of the Department of Corrections." *Id*. (quotation marks and citation omitted). However, this Court recognized "given the particular facts of this case, even a liberal construction of the phrase 'incarcerated in a penal or reformatory institution' [did] not bring defendant within MCL 768.7a(1) for sentencing purposes." *Id*. at 416-417. This Court held that after the MDOC erroneously released defendant in 2011, it ceased to have control over the defendant and her activities. *Id*. at 417.

In 2018, the Supreme Court released *People v Washington*, 501 Mich 342; 916 NW2d 477 (2018). In *Washington,* 501 Mich at 346, the Court recognized that "[u]nder the Michigan Penal Code, a person is guilty of the offense of felony-firearm if he or she carries or possesses a firearm when committing or attempting to commit a felony." Under the Penal Code, a felony is an "offense that is punishable by imprisonment in state prison upon the defendant's conviction." *Id*. at 353 (quotation marks and citation omitted). Under "Michigan's Code of Criminal Procedure, a defendant may be imprisoned in a state penal institution, as opposed to a county jail, if the punishment for the offense is more than one year's imprisonment," which means that "an offense punishable by more than one year's imprisonment would be an offense for which an individual may be imprisoned in a state prison." *Id*. at 354. "Accordingly, the Legislature clearly expressed its intent that a person is guilty of felony-firearm under the Penal Code if he or she carries or possesses a firearm when committing or attempting to commit an offense that is punishable by imprisonment for more than one year." *Id*. Under Michigan's Public Health Code, "the offense of keeping or maintaining a drug house is punishable by imprisonment for more than one year, which necessarily means that the offense is punishable by imprisonment in a state prison," which means that it "meets the definition of 'felony' in the Penal Code." *Id*. at 355. However, under the Public Health Code, the offense of keeping or maintaining a drug house is labeled a misdemeanor. *Id*. The Court, therefore, had to decide "whether a person is guilty of *felony*-firearm if he or she carries or possesses a firearm when keeping or maintaining a drug house." *Id*. at 346-347 (emphasis added).

To address the conflict, the Court turned to *Smith* for guidance. The Court recognized that in *Smith*, it "made it abundantly clear that definitions and labels in one code apply only to that particular code; they are not to be transferred and applied to other codes." *Id*. at 357. For example,

-6-

"an offense expressly labeled a misdemeanor in one code does not necessarily mean the same offense is a misdemeanor for purposes of interpreting and applying a different code." *Id*. The Court recognized that if it applied "the Public Health Code's misdemeanor label to the application of the Penal Code and treated this offense as a misdemeanor, [it] would be ignoring the Legislature's clear directive to interpret the term 'felony' for purposes of applying the Penal Code as an offense punishable 'by imprisonment in state prison' upon the defendant's conviction." *Id*. at 358.

The holdings contained in *Johnson*, *Parker*, and *Washington* make it evident that the definition of the word "prison" in MCL 750.193(2) does not control the definition of the term "penal or reformatory" institution. As succinctly stated in *Smith*, "the Penal Code definitions apply only to the Penal Code," and "the definitions of the Code of Criminal Procedure are limited in application to that code." *Smith*, 423 Mich at 445. However, because they are nevertheless *in pari materia*, see *Johnson*, 96 Mich App at 86, this Court may look to the definition of "prison" to broadly construe the term "penal or reformatory institution."

Although the Supreme Court held in *Washington*, 501 Mich at 357, "that definitions and labels in one code apply only to that particular code; they are not to be transferred and applied to other codes," the Court was not overruling the doctrine of *in pari materia*, which provides that "[w]hen two statutes lend themselves to a construction that avoids conflict, that construction should control." *People v Rahily*, 247 Mich App 108, 113; 635 NW2d 227 (2001). The doctrine of *in pari materia* applies with "[s]tatutes which relate to the same persons or things, or which have a common purpose[.]" *Smith*, 423 Mich at 441-442. The Supreme Court recognized in *Smith*, 423 Mich at 442 that "the Penal Code and the Code of Criminal Procedure relate generally to the same thing and must therefore be read *in pari materia*."

Although the *Smith* Court also recognized that the two statutes "were separately enacted and have distinct purposes" because the Penal Code defines crimes and prescribes penalties for crimes, and the Code of Criminal Procedure codifies laws in regard to criminal procedure, the Court was specifically analyzing the relationship between Michigan Penal Code and Code of Criminal Procedure in regard to that issue in the case, which was the conflicting labels and definitions each code provided for the terms "misdemeanors" and "felonies." See *id*. at 442-445. The *Smith* Court recognized that "[e]ach code has its own definitions of 'misdemeanor' and 'felony' in order to more effectively promote the distinct purpose of each" and that "apply[ing] the definition of misdemeanor in one statute to the operations of the other statute would defeat the purposes of the other statute." *Id*. at 444. The Court held that the labels provided by the Penal Code were "irrelevant in determining statutorily mandated post-conviction procedures in the Code of Criminal Procedure" and "in determining constitutionally mandated post-conviction procedures." *Id*. at 445.

Additionally, in *Washington*, 501 Mich at 352-362, while determining the controlling effect of the labeling and definitions of "misdemeanor" and "felony" provided for in the Public Health Code in regard to the Code of Criminal Procedure, the Court recognized that the Public Health Code's definitions of "misdemeanor" and "felony" did not control the Code of Criminal Procedure's definitions of the same word because doing so would be contrary to the Legislature's intent. *Id*. at 358, 361-362.

The Supreme Court's holdings in both *Smith* and *Washington* are helpful in resolving the issue in this case. In *Smith* and *Washington*, the Court was dealing with sections of two different codes that were directly at odds with each other. In *Smith*, 423 Mich at 442, the Court recognized that the Code of Criminal Procedure and the Michigan Penal Code had different definitions of the words "felony" and "misdemeanor," and they therefore disagreed on whether certain offenses were felonies or misdemeanors. The same issue arose in *Washington*.

However, no such direct conflict exists between MCL 768.7a(1) and MCL 750.193(2) and how this Court has used MCL 750.193(2) to interpret the term "penal or reformatory institution" in MCL 768.7a(1). When determining whether an institution qualifies as a "penal or reformatory" institution under MCL 768.7a(1), this Court has turned to the definition of "prison" in MCL 750.193(2) to the extent that it would broaden the plain language of the term "penal or reformatory" institution because as a consecutive sentencing statute, MCL 768.7a "should be construed liberally in order to achieve the deterrent effect intended by the Legislature." *Parker*, 319 Mich App at 414-415. As held many times by this Court, "[t]he purpose of a consecutive sentencing statute is to deter persons convicted of one crime from committing other crimes by removing the security of concurrent sentencing." *Id*. at 414.

For example, in *Parker*, 319 Mich App at 414-416, when this Court determined whether a defendant who committed a crime after she was erroneously released from an earlier sentence was subject to consecutive sentencing pursuant under MCL 768.7a, this Court first looked to the plain language of MCL 768.7a(1) and held that under the plain language of MCL 768.7a(1), defendant was not subject to the terms of MCL 768.7a. However, this Court then recognized that the term "penal and reformatory institution" for consecutive sentencing purposes may be "broadly construed to include any grounds under the control of any person authorized by the Department of Corrections to have a prison inmate under care, custody or supervision either in an institution or outside an institution." *Parker*, 319 Mich App at 416. The definition referred to by this Court is the definition of prison pursuant to MCL 750.193(2). However, this Court realized that the defendant was not "incarcerated in a penal or reformatory institution" under the plain language of the term or under the broad construction of the term "penal or reformatory institution." *Parker*, 319 Mich App at 416-417. Therefore, MCL 768.7a(1) did not apply. *Id*.

Additionally, in *Johnson*, 96 Mich App at 86, this Court recognized that there was no caselaw in regard to whether a community corrections program qualified as a "penal or reformatory institution" under MCL 768.7a(1). Therefore, it turned to the definition of prison in MCL 750.193(2) and caselaw interpreting the definition of "prison" to conclude that "penal or reformatory institution" should be read broadly, as to not "subvert legislative intent," to include a community corrections program." *Id*. at 86-88.

Furthermore, recently, in *People v Arnold*, 328 Mich App 592; 939 NW2d 690 (2019), this Court held that a provision of "the Penal Code and the Code of Criminal Procedure—MCL 750.335a and MCL 777.16q—must be read *in pari materia*." In *Arnold*, 328 Mich App at 606-612, this Court analyzed the holdings of *Washington* and *Smith* when determining how to construe "the discrepancy or disconnect in sentencing options between MCL 750.335a of the Penal Code and MCL 777.16q of the Code of Criminal Procedure." This Court, in accordance with the doctrine of *in pari materia*, ruled that the two provisions could be harmonized and held that trial

courts had the option to sentence defendants under MCL 750.335a "or to a term consistent with the advisory sentencing guidelines." *Id*. at 612.

Therefore, in this case, the definition of the word "prison" in MCL 750.193(2) is not controlling of the term "penal or reformatory institution" in MCL 768.7a(1). This Court should look to the plain language of MCL 768.7a(1). See *Parker*, 319 Mich App at 415-416. However, when the plain language of MCL 768.7a(1) is narrow and contrary to the Legislature's intent, this Court may turn to the definition of the word "prison" and caselaw interpreting the word "prison." See *id*.

This Court must now determine whether the Legislature intended for programs like KPEP to fall within the definition of the phrase "penal or reformatory institution" in MCL 768.7a(1).[5] As stated earlier, the Michigan Code of Criminal Procedure does not provide a definition for the terms "penal or reformatory institution," "penal institution," or "reformatory institution." This Court may therefore consult a dictionary. See *Rea*, 500 Mich at 428.

*Black's Law Dictionary* (11th ed) does not define the terms "penal institution" or "reformatory institution." However, it defines the word "penal" as "[o]f, relating to, or being a penalty or punishment, esp. for a crime," and it defines the word "reformatory" as "[a] penal institution in which young offenders, especially minors, are disciplined and trained or educated." *Black's Law Dictionary* (11th ed). Additionally, *Black's Law Dictionary* states that the relevant definition of the word "institution" is "[a]n established organization, esp. one of a public character, such as a facility for the treatment of mentally disabled persons."

It is evident that KPEP would not qualify as a "reformatory institution" under the plain language of the term because DeBoer's testimony provided no indication that the institution was designated for "young offenders, especially, minors," and defendant was not a minor at the time the crime was committed and sentenced. *Black's Law Dictionary* (11th ed). Therefore, this Court must determine whether KPEP qualified as a "penal institution." Utilizing both the definition of the word "penal" and the definition of the word "institution," it is evident that a "penal institution" is "an established organization, especially one of public character" that is "[o]f, relating to, or being a penalty or punishment, esp. for a crime." *Black's Law Dictionary* (11th ed).

The testimony that KPEP CEO DeBoer and probation agent Penny provided at the evidentiary hearing makes it evident that the KPEP program defendant was ordered to participate in—a residential in-patient program through the MDOC—clearly falls under the definition of the term "penal institution" used in MCL 768.7a(1). DeBoer stated that KPEP was a private institution. Additionally, DeBoer testified that many KPEP residents felt that KPEP was punitive in nature and did not want to be there. The residents who participated in the program were

---

[5] At the evidentiary hearing, DeBoer testified that KPEP was considered a community corrections program. In *Johnson*, 96 Mich App at 88, this Court held that a defendant in a community corrections program was subject to consecutive sentencing under MCL 768.7a(1). However, in that case, this Court only explicitly analyzed the definition of prison in MCL 750.193(2) to reach its holding.

generally criminal offenders who were court ordered to participate in KPEP as part of their parole or as part of a probation violation. Although KPEP facilities were not secure, the residents were monitored and prohibited from leaving without permission, and the residents were subject to counts and searches. Additionally, if a resident left the facility without permission, the resident's parole or probation officer was notified. KPEP restricted many freedoms of the residents. For example, residents were required to sign in and out of the facility, they were not permitted to have cell phones in the building, and their possessions were subjected to searches. KPEP staff monitored the residents and any of their permitted visitors at all times when they were in a KPEP facility. KPEP staff was also required to monitor and verify the residents' movements when they left the facility. Penny also testified that residents of KPEP were heavily monitored and supervised and that their movements were restricted. Penny explained that KPEP was a program that a defendant had to be court ordered to attend because it involved taking away a person's freedom.

Therefore, we conclude that the KPEP falls within the definition of the term "penal institution" pursuant to MCL 768.7a(1).[6] Accordingly, defendant is subject to consecutive sentencing pursuant to MCL 768.7a(1).

Affirmed.

/s/ Karen M. Fort Hood
/s/ David H. Sawyer
/s/ Deborah A. Servitto

---

[6] Because we have determined that MCL 750.193(2) does not control whether a facility is a "penal or reformatory institution" under MCL 768.7a(1), and we have interpreted the plain language of MCL 768.7a(1) to conclude that KPEP is a "penal or reformatory institution," we need not determine whether KPEP falls within the definition of "prison" in MCL 750.193(2).